(17 Misc. Rep. 186)

In re SCHWEIGERT'S WILL.

(Surrogate's Court, Cattaraugus County. May, 1896.)

1. WILLS—EXECUTION—RECOLLECTION OF ATTESTING WITNESSES.
    One of the attesting witnesses of a will executed 18 years before it was offered for probate testified that he did not see testator sign it, but that he remembered testator's saying that he wanted to go on a journey, and wanted to make a will before he went; that the draftsman stated in testator's presence that the paper was testator's will. On his redirect examination he stated that his best recollection was that testator signed the will in his presence, and in the presence of the other witness, before the witnesses signed. The only recollection of the other witness was that he signed the will as a witness. The draftsman testified, from his method of doing business of that kind, that the attestation clause, which was complete, except that it stated that testator "sealed, published, and declared" the will, instead of stating that he "signed" it, was read over to the attesting witnesses before they signed it. Held, that a due execution of the will was sufficiently shown.

2. SAME—SUPPLYING OMITTED WORDS.
    A clause bequeathing to certain persons "the sum of one hundred each" refers to money, and, as the omitted word could be no other than "dollars," such word will be supplied.

Proceeding for the probate of the will of Augustus Schweigert, deceased.

Frank Chase and W. G. Laidlaw, for proponent.

W. W. Woodworth and W. K. Harrison, for contestants.

DAVIE, S. The will in question bears date April 29, 1878. The testator died on the 28th day of December, 1895. No issue is presented by the objections filed or the evidence as to decedent's testamentary capacity, nor is the question of undue influence involved, but it is asserted on the part of the contestants that the proponent

has failed to show a compliance with the statute in the execution of the will, or that decedent was apprised of its contents before its execution. The evidence of the attesting witnesses regarding formalities of execution, as might be reasonably expected in consequence of the long lapse of time, is to some extent indefinite and uncertain. The will was drawn by a justice of the peace familiar, to some extent, with the preparation and execution of wills, and who resided in the vicinity of the decedent. The attesting witness Lints says: "The will was drawn about eighteen years ago. This is my signature to the will. I was at Multer's office when I signed it. He was a justice. Schweigert came to me, and asked me to go to Multer's office, to witness his will. I went, and found Boss [the other attesting witness] at the office. He went with me. The will was drawn. I do not remember that I saw Schweigert sign it. I can only recollect one circumstance. Deceased said he and his wife wanted to go on a journey, and he wanted to make a will before he went. Boss signed it at the same time. I saw him sign it. Multer did not read anything to me, but stated that was Schweigert's will. Deceased was there when he said that." On his cross-examination, after speaking of what deceased had said about going on a journey, the witness added: "That was all I could recall, except that I remember going to Multer's office, and signing some paper that was called a will." On redirect examination he testified: "My best recollection is that deceased wrote his name to the will in my presence there, in the office, and in presence of Boss, and before I signed." The memory of the other attesting witness, Boss, was even less distinct as to the details of execution. He recalled the circumstance of being at Multer's office, and signing the will, and he says: "The first thing, when I got to the office, I think, a part of the will was read over, and I signed it." The justice who drew the will testified that deceased spoke to him about drawing the will a few days before its execution, and made an appointment with him for that purpose; and, while he says that he has no distinct recollection of the witnesses being present at the time of the execution, he testifies: "I know their handwriting, and am satisfied that they were there at date of execution of will. I have no doubt that it [the attestation clause] was read over to them at the time, and in presence of deceased. I am willing to swear positively that I read this attestation clause to each of the witnesses in the presence of deceased, but I testify to that from my method of doing business of this kind." The examination of each of these witnesses was somewhat exhaustive, but the substantial portion of their evidence is above set forth, and it is quite apparent that their evidence, unsustained by the surrounding circumstances and the attestation clause, falls far short of being sufficient to establish compliance with the statute. The circumstance of the indistinctness of recollection on part of the witnesses is entirely explained by the fact that the will was made in 1878; that it was a transaction in which they had no personal interest, and to which their attention had not been called until proceedings were instituted for probate of the will. Cases of this character have frequently arisen, and the

courts have held that, where the attestation clause to the will is full and complete, it is not always essential that all of the particulars required by the statute to constitute a valid execution of a will should be expressly proved. The presumption is in favor of due execution, and a failure of recollection on the part of the subscribing witnesses will not defeat the probate, if the surrounding circumstances, taken together with the attestation clause, satisfactorily establish such execution. In re Pepoon's Will, 91 N. Y. 255.

The evidence shows that the decedent desired to make a will. He had a substantial reason for so doing. He employed the justice to draw the same. He went to the office of the justice on the appointed day, selected and called in each of the attesting witnesses, and told each of them that he wanted them to go to Multer's office to sign his will. Multer testifies that he drew the will after consultation with the decedent, and in the manner directed by him. The attestation clause is as follows:

"The above instrument, consisting of one sheet, was at the date thereof sealed, published, and declared by the said Augustus Schweigert as and for his last will and testament, in presence of us, who, at his request, and in his presence, and in the presence of each other, have subscribed our names as witnesses thereto.  John Lints, Residing at Ashford, Catt. Co.
"H. D. Boss, Residing at Ashford, Catt. Co."

It will be seen that this attestation clause is full and complete in every particular, except that it fails to recite that decedent signed the will in the presence of the witnesses. The phrase used is "sealed, published, and declared by the said Augustus Schweigert." One witness, who was familiar with the handwriting of the deceased, testified that the signature at the end of the will was that of the decedent. In fact, there is no substantial controversy about that. One of the attesting witnesses, as above set forth, states that, according to his best recollection, decedent signed the will in his presence, and in the presence of the other witness. The witness Multer was asked the following question: "After looking at the will, can you say that deceased signed it before the witnesses did?" To which the witness answered, "Yes." I am of the opinion, after a careful review of the authorities bearing upon this question, that this evidence, taken in connection with the surrounding circumstances, establishes the fact that decedent either signed the will in the presence of the witnesses, or acknowledged his signature to them.

In the case of Nickerson v. Buck, 12 Cush. 332, Justice Dewey says:

"All that is necessary for him [the witness] to know from the testator is that the signature to the will is his, or written by his direction, and adopted by him. Hence, if the witness be requested by the testator to sign his name to the instrument as attesting witness, and the testator declares to the witness that the signature to the will is his, that is abundantly sufficient. But the adjudicated cases go further, and hold that the actual signature may be made known to the witnesses in other modes than an expressed declaration to the witnesses that the will is his. Any act or declaration carrying by implication an averment of such fact is equally effectual. Hence it has been repeatedly held that a declaration by a testator to the witnesses that the instrument is his will, or even a request by him to the witnesses to attest

his will, or other varied forms of expression implying that the same had been signed by the testator, are either of them quite sufficient."

The same principle was also recognized and applied in Ela v. Edwards, 16 Gray, 91.

In the case of Ellis v. Smith, 1 Ves. Jr. 10, the principal question in controversy was whether the testator's declaration before the witnesses that the paper was his will was equivalent to signing it before them, and it was held that it was.

In Blake v. Knight, 3 Curt. Ecc. 549, three witnesses had signed the attestation clause. Two of them testified that testator did not sign or acknowledge the signature in their presence, and the other could not say whether he did or not, but there were surrounding circumstances indicating a due execution of the will, and it was admitted to probate.

In Gaze v. Gaze, 3 Curt. Ecc. 451, deceased exhibited the will to the witnesses already signed and sealed, and either pointed out the places where they should sign, or said, "Put your names below mine." They signed accordingly, and this was held a sufficient acknowledgment of his signature.

In the Case of Warden, 2 Curt. Ecc. 334, the will had been signed before the witnesses came into the room. The witnesses were sent for by her. The draftsman produced the will, and told the testatrix that the witnesses had come, to which she replied, "I am very glad of it. Thank God." Then the witnesses signed their names, and the court held that the signature was sufficiently acknowledged.

In Re Ware, reported in a note (25 N. Y. 425), one of the attesting witnesses testified before the surrogate that she was not requested by the testatrix to sign the will as a witness, and that there was no publication of the instrument as her last will and testament; yet, in consideration of the circumstances attending the execution of the will, the court admitted it to probate. .

In Peck v. Cary, 27 N. Y. 9, it was held that the signature of the testator, or his acknowledgment thereof in the presence of the witnesses, and his publication of the instrument as a will, were proved by the attestation clause and the attending circumstances, though after the expiration of two years none of the witnesses could testify that he saw the testator sign, or heard him acknowledge his signature, nor could testify that he himself read or heard read the attestation clause. See, also, Willis v. Mott, 36 N. Y. 486; Butler v. Benson, 1 Barb. 527.

In the case of Theological Seminary v. Calhoun, 25 N. Y. 422, the publication of the will was established by the testimony of one of the attesting witnesses in direct opposition to the evidence of the other.

The Code expressly provides that the proof of a will may be established when a subscribing witness has forgotten the occurrence of its execution, or testifies against it upon proof of the handwriting of the testator and the subscribing witness and of such other circumstances as would be sufficient to prove the will upon the

trial of an action. Section 2620. This section received application in Brown v. Clark, 77 N. Y. 369, where the court held that where the attestation clause of the will recites all of the facts necessary to constitute a due execution and publication, and is signed by two witnesses, and it appears that the testator executed the will in the presence of the witnesses, that they were requested by someone to become witnesses to a will, and that they attended at the time in pursuance of such request, the fact that the witnesses, when examined, are unable to recollect that they signed as witnesses at the request of the testator does not authorize a finding that the statute requirements have not been observed. In the absence of evidence contradicting the recital, this lack of memory does not rebut the presumption of due publication arising from the attestation clause and the other circumstances.

In view of these authorities, I am convinced that the will in question ought not to be denied probate in consequence of the uncertainty of recollection on the part of the attesting witnesses.

In regard to the remaining question, as to whether or not the decedent understood the contents of the will at the time of its execution, but little doubt could arise. The deceased was a German, who had lived in this country for many years, and who did not learn English or speak the English language readily; yet it is evident that he could make himself understood in ordinary business transactions, when dealing with those who did not understand the German language. For many years he transacted business at the bank, making his own deposits, and giving instructions regarding the same. He informed Mr. Multer as to what disposition he desired to make of his property. He was a man of ordinary shrewdness and sagacity, and it would be contrary to reason to hold that he signed the will in question without comprehending its contents.

The objections filed call for a construction of the will in some particulars. By the first item of the will, the testator devises to his widow 50 acres of land from the north end of his farm, that being the portion on which the buildings are located, during life, the same to be accepted by her in lieu of dower. He also bequeathed to her one-third of his personal property absolutely. The second item of his will is as follows: "I give and bequeath unto Louisa Kesler, Madaline Michael, Frank Kesler, and Leopold Kesler (children of my said wife by her first husband, Leopold Kesler) the sum of one hundred each," etc. Contestants claim that this item of the will is void as a testamentary disposition of personal property, because of its uncertainty and indefiniteness. The difficulty arises from the omission of some word after the word "hundred." Standing in its present form the bequest is meaningless. It is evident that the scrivener inadvertently omitted a word in transcribing the will. Two questions arise in consequence: First. Can the omitted word intended to be employed by testator be ascertained from the phraseology of the entire sentence? And, second, is the court authorized to supply such missing word in order to effectuate the intention of the testator? The expression, "I give and bequeath unto," etc., "the sum of one hundred each," indicates a design to make

a bequest in money. If its purpose had been to bequeath to each of the parties named 100 specific articles of personal property other than money, the term "sum of" would hardly have been used. If the expression "one hundred" relates to money, it can by no possible exercise of the imagination be construed as meaning other than "one hundred dollars." It would be farcical to assert that he might have meant "one hundred cents" or "one hundred shillings." The character of the omission at once suggests itself upon reading the sentence. If, then, this intention is apparent, it is proper to supply the omission. In construing wills, the court may transpose, reject, or supply words so that it will express the intention of the testator. Starr v. Starr, 132 N. Y. 158, 30 N. E. 384. The meaning of the testator must be ascertained, if possible, however difficult or obscure the language; and it is only after every effort to discover that meaning has failed that the provision can be wholly rejected. Kane v. Astor, 9 N. Y. 113; Pond v. Bergh, 10 Paige, 140. Words of bequest inadvertently omitted may be supplied to effectuate the intention of the testator. Marsh v. Hague, 1 Edw. Ch. 174; Carter v. Bloodgood, 3 Sandf. Ch. 293. Under these authorities, the power to supply the omitted word is ample. A decree will be made admitting the will to probate, and construing item 2 as a bequest of $100 to each of the parties therein named.

The surrogate's court has no authority to construe the third item of the will, as that relates exclusively to real estate.

Ordered accordingly.