[S. F. No. 175.   Department Two.—July 29, 1896.]

IN THE MATTER OF THE ESTATE OF HIRAM A. PEAR-
SONS, DECEASED.

<div style="float:right">113 577<br>s125 286</div>

WILLS—CONSTRUCTION—BEQUESTS TO ORPHAN ASYLUMS—DESIGNATION BY
PROBATE JUDGE.—A provision in a will directing certain property of a
testator to be sold and the proceeds to be "equally distributed among the
different orphan asylums of the city and county of San Francisco," and
requesting that they "be designated by the judge of the probate court,"
is to be construed as asking the court to designate all the orphan asylums
in the city and county, and the probate judge has no right to select some
to the exclusion of others.

ID.—JUDGE AS TRUSTEE OF POWER—DISCRETION.—The probate judge can-
not, at the same time, act as trustee of a power under the will, and as
a judge; and where discretionary powers are such as would not belong to
the court because of its jurisdiction over the subject matter of the
trust independent of the authority of the will, the court will not exer-
cise it, and cannot confer such discretion on a trustee.

ID. — PROBATE JURISDICTION OF SUPERIOR COURT — DEPARTMENT IN SAN
FRANCISCO.—There is no probate court of the city and county of San
    CXIII. CAL.—37

Francisco, but the superior court has jurisdiction of probate matters, and there is no law authorizing the designation of any one department of said court for probate jurisdiction; but each of the twelve judges has jurisdiction in probate matters.

ID.—DESIGNATION OF ORPHAN ASYLUMS—JUDICIAL FUNCTIONS—POWER OF SELECTION—DELEGATION TO COURT—To determine what institutions are orphan asylums of San Franciscco, involves the exercise of judicial functions; but to select certain orphan asylums in accordance with no rule laid down in the will, is not the exercise of judicial functions, and such power cannot be imposed upon a court by a testator.

ID. — NATURE OF ORPHAN ASYLUM — NAME.— The fact that the phrase "orphan asylum" does not appear in the name of an institution which has orphans among its inmates, is of no consequence, nor is it essential that its business should be confined to the reception of orphans, if it in fact received orphans and provides a home and protection for them.

ID. — ORPHAN ASYLUMS OF CITY AND COUNTY — ASYLUMS OUTSIDE CITY LIMITS.—The fact that San Francisco people may maintain orphan asylums situated outside of the limits of the city and county of San Francisco, and that they may receive most of their inmates from San Francisco, does not make them orphan asylums of the city and county, within the meaning of a will providing for such asylums, but the home for orphans must be within the city limits.

ID. — BOYS AND GIRLS' AID SOCIETY — CHARTER FOR ORPHAN ASYLUM — REFORMATORY.—Although the Boys and Girls' Aid Society of San Francisco has a provision in its charter for the maintenance of an orphan asylum, it cannot be considered such, since it has not in fact maintained it, but is in its nature a reformatory.

ID.—LEGACIES VEST AT DEATH OF TESTATOR—TIME OF DISTRIBUTION IM-MATERIAL — NEW CLAIMANTS.— Legacies vest as of the death of the testator, ●nd not at the time of the distribution of his estate, and orphan asylums existing at the time of his death are those to be included in a bequest in aid of orphan asylums, and no new claimants who were not conducting orphan asylums at his death could share in the fund.

APPEAL from an order of the Superior Court of the City and County of San Francisco of partial distribution of the estate of Hiram A. Pearsons, deceased. J. V. COFFEY, Judge.

The facts are stated in the opinion of the court.

*Charles F. Hanlon*, for Appellant Girls' Directory Orphan Asylum.

Where the testator provides for a donation to certain heirs or legatees of a certain class, which donation is to be given to them upon the happening of a contingency,

it is the heirs and legatees in existence at the time of
the distribution who are to participate, and not those
who were in existence at the time of the death. (*Ken-
nedy* v. *Kingston*, 2 Jacob & W. 431; *Mahon* v. *Savage*,
1 Schoales & L. 111.) The court cannot act as an ex-
ecutor or trustee in a case pending for trial before it.
(*People* v. *Sanderson*, 30 Cal. 160.) Even if the testator
intended that the probate judge should "select some"
of the many *bona fide* orphan asylums, still, under the
law, he was bound to select all of them without excep-
tion. (*Lippincott* v. *Ridgway*, 11 N. J. Eq. 526; 10 N. J.
Eq. 164; 1 Jarman on Wills, 254, 255, 256; 2 Eq. Cas.
Abr. 195; *Longmore* v. *Broom*, 7 Ves. 124; *McNeilledge*
v. *Galbraith*, 8 Serg. & R. 43; 11 Am. Dec. 572; *Withers*
v. *Yeadon*, 1 Rich. Eq. 324.) The Girls' Directory
Orphan Asylum was always an orphan asylum.

*M. C. Hassett*, for Appellant Roman Catholic Orphan
Asylum.

The court did not err in designating the St. Vincent
Roman Catholic Orphan Asylum as one of the benefi-
ciaries. (*St. Luke's Home* v. *Association for Indigent
Females*, 52 N. Y. 191; 11 Am. Rep. 697; *New Orleans* v.
*Hardie*, 43 La. Ann. 251; *Fink* v. *Fink*, 12 La. Ann. 306;
*Hazeltine* v. *Vose*, 80 Me. 374; *Prichard* v. *Thompson*, 95
N. Y. 76; 47 Am. Rep. 9.) The words in the will "of
the city and county of San Francisco" do not preclude
it from taking under the bequest. (*American Bible Soc.*
v. *Colonization Soc.*, 2 N. Y. Supp. 774.

*T. C. Coogan*, for Appellant Boys and Girls' Aid So-
ciety of San Francisco.

The Boys and Girls' Aid Society was, and is, an or-
phan asylum of the city and county of San Francisco,
and its articles of incorporation contained the purpose
for which it was formed, as required by section 290 of
the Civil Code. (Black's, Anderson's, and Webster's
Dictionaries, tits. "Orphan," "Asylum.")

*J. E. Foulds,* for Appellant Bishop Armitage Church Orphanage of California.

Appellant is an orphan asylum of the city and county of San Francisco. (Century Dictionary, tit. " Asylum.") The language of the bequest shows that it was made to a class, and the provision that the members of the class should be designated by the judge of the probate court cannot be held to confer upon him any arbitrary power of selection. (1 Jarman on Wills, 269; *Druid Park Heights Co.* v. *Oettinger,* 53 Md. 63; 1 Perry on Trusts, 255, 266; *Burrough* v. *Philcox,* 5 Mylne & C. 72; *People* v. *Sanderson,* 30 Cal. 160.) The mere location of the building can by no possibility affect the *status* of the appellant as a San Francisco orphan asylum.

*Joseph Hutchinson,* for Appellant San Francisco Ladies' Protection and Relief Society.

The language used by the will cannot be construed to create an absolute discretionary power of appointment, selection, and exclusion. (*Marlborough* v. *Godolphin,* 2 Ves. 61; *Washburn* v. *Alden,* 5 Cal. 465; *Billings* v. *Morrow,* 7 Cal. 175; *Taylor* v. *Robinson,* 14 Cal. 396; Civ. Code, sec. 2321; 1 Sugden on Powers, 3d Am. ed., 573, 576; *Pocklington* v. *Bayne,* 1 Bro. C. C. 450; *Malim* v. *Keighley,* 2 Ves. Jr. 333; *Maddison* v. *Andrew,* 1 Ves. Sr. 57; *Baker* v. *Barrett,* 2 Freem. 199; *Alexander* v. *Alexander,* 2 Ves. Sr. 640; *Kemp* v. *Kemp,* 5 Ves. Jr. 849; *Garthwaite* v. *Robinson,* 2 Sim. 43.) If it attempted to create such power, it would be invalid. (*People* v. *Sanderson,* 30 Cal. 160; *Erskine* v. *Whitehead,* 84 Ind. 364; *Beekman* v. *Bonsor,* 23 N. Y. 298; 80 Am. Dec. 269; *Druid Heights Co.* v. *Oettinger,* 53 Ind. 63.) Appellant is an orphan asylum, and it is immaterial that the corporate name and the statement of the purposes in the articles of incorporation do not contain the words "orphan asylum." (Century Dictionary, tit. "Asylum;" *Los Angeles* v. *State Loan etc. Co.,* 109 Cal. 396; Thompson on Corporations, arts. 5641, 5642, 5967; *In re Wehr-*

*hane,* 40 Hun, 542; *Wood* v. *Hammond,* 16 R. I. 98; *New York Institution for the Blind* v. *How,* 10 N. Y. 84; *Lanning* v. *Sisters of St. Francis,* 35 N. J. Eq. 392; *Lefevre* v. *Lefevre,* 59 N. Y. 440; *Domestic and Foreign Missionary Society's Appeal,* 30 Pa. St. 425; *Chapin* v. *School District,* 35 N. H. 445; *Bunting* v. *Marriott,* 19 Beav. 163; *Wilson* v. *Squire,* 1 Younge & C. Ch. 654; *In re Gibson,* 75 Cal. 329.)   St. Vincent's Roman Catholic Orphan Asylum is not an orphan asylum of the city and county of San Francisco.

*George W. Haight,* for Respondent San Francisco Protestant Orphan Asylum.

*A. N. Drown,* for Respondent Maria Kip Church Orphanage.

*A. H. Loughborough,* for Respondent Roman Catholic Orphan Asylum.

*Naphtaly, Freidenrich & Ackerman,* for Respondent Pacific Hebrew Orphan Asylum.

The testator intended to confer upon the judge of the probate court a power of selection, and this power has been exercised, and the selection made thereunder is exclusive. (Civ. Code, sec. 1325; 1 Perry on Trusts, secs. 250, 256; 18 Am. & Eng. Ency of Law, 882; *American Board of Commrs. of Foreign Missions* v. *Ferry,* 15 Fed. Rep. 696; *Pray* v. *Belt,* 1 Pet. 679.)   Appellants are not members of the class to which the fund in question was bequeathed. (See Century, Webster's Standard, Worcester's Dictionaries, tits. " Asylum," " Institution ") Century Dictionary, tit. " Orphan Asylum.")   While the San Francisco Ladies' Protection and Relief Society conducts and maintains an asylum, it is not an orphan asylum.   The Girls' Directory Orphan Asylum was not, at the date of the testator's death, nor at any time prior thereto, one of the " different orphan asylums of the city and county of San Francisco."   The Boys and Girls' Aid Society is not, and never has been, one of

the "different orphan asylums of the city and county of San Francisco."

TEMPLE, J.—The decedent died July 7, 1889, leaving an olographic will. In it he provided that in a certain event—which occurred—specified property should be sold, and that "the proceeds of such sale be equally distributed among the different orphan asylums of the city and county of San Francisco, "and said asylums I request to be designated by the judge of the probate court." The property was sold and a large sum realized. There were thirteen different applications for a share of the fund, each applicant claiming to be an orphan asylum of the city and county of San Francisco, and asking that a partial distribution be made.

The court found that of the money in the hands of the executor one hundred thousand dollars could be distributed without danger to creditors, and that such sum did not constitute one-third in value of the estate.

The court made a decree distributing that sum, and designated five only of the applicants as orphan asylums of the city and county of San Francisco. These are the Roman Catholic Orphan Asylum, the San Francisco Protestant Orphan Asylum, the Maria Kip Church Orphanage, the St. Vincent Orphan Asylum, and the Pacific Hebrew Orphan Asylum.

Four of the eight institutions whose claims were rejected appealed. They are the San Francisco Ladies' Protection and Relief Society, the Bishop Armitage Church Orphanage, the Boys' and Girls' Aid Society, and the Girls' Directory Orphan Asylum.

Respondents raise a preliminary point that it matters not whether the appellants are orphan asylums of the city and county of San Francisco or not, because, they say, the will gave to the judge of the probate court the power of selection, and that selection having been made is conclusive. This must mean that the judge was not acting simply as judge, exercising functions con-

ferred upon him by law, but was acting under a power contained in the will.

A mere statement of the proposition disposes of it. The judge could not at the same time act as trustee of a power under the will and as judge.   The principle is correctly enunciated in *Druid Park Heights Co.* v. *Oettinger*, 53 Md. 46, as follows:

"In this state, as in almost all the United States, courts of equity take the supervision of all trusts.  'Relief has been decreed when the original trustees declined to act, or were desirous of being discharged; or had absconded; or were incapable of acting, through age or infirmity; or could not discharge the trust through disagreement amongst themselves; or had been guilty of breaches of trust; or had become bankrupt.'  (Hill on Trustees, 290, 291.)   The substituted trustee, when so appointed and qualified, sustains to the estate the character of trustee as fully as if he had been originally appointed.   (*Cole* v. *Wade*, 16 Ves. 44.)   But where the discretionary powers are such as would *not belong to the court because of its jurisdiction* over the subject matter of the trust, independent of the authority of the will—as, for instance, where the power is one of selecting the beneficiaries to enjoy the testator's bounty—the court will not exercise it, and under the rules of law cannot confer such discretion on a trustee."

But there is no indication of such intention in the will.   The "different orphan asylums" plainly means all the orphan asylums, and these—that is, all the orphan asylums—the court is asked to designate.   This clause was unnecessary, but it is not inoperative.   The presumption undoubtedly is, that no clause is redundant or unnecessary.   But this is a presumption easily overcome, and such repetitions and unnecessary expressions are quite common in wills.   They are sometimes inserted to remove doubts or make plain some previous clause.   It is not inconsistent with the previous clause requiring a division among the asylums, and must be so construed as to harmonize with it.

Suppose Pearsons had acquired subsequently, to the execution of the will, a residence in the county of Alameda—which residence he retained until his death —would it be held that the probate judge of San Francisco was intended? In what way could the probate judge of San Francisco have made the selection? And who is the probate judge of San Francisco? There is no probate court in the city and county of San Francisco, and no probate judge. The superior court has jurisdiction of probate matters. This court has twelve judges. No one is especially designated for probate jurisdiction, and there is no law authorizing such designation. Any one may exercise probate jurisdiction, and any or all may participate in making a decree of distribution.

There is nothing in the record to show that the court acted otherwise than as a court in the exercise of the powers conferred upon it by law, and we must presume it so acted.

To determine what institutions are orphan asylums of San Francisco involves the exercise of judicial functions. To choose from these institutions certain ones, exercising the discretion in accordance with no rule laid down in the will, is not the exercise of judicial functions. A judge determines existing rights, but does not create rights by the exercise of an uncontrolled volition. A testator could not impose such a duty upon a court. He may, however, by his will confer rights upon others who may assert them before a court, and thus require a designation according to a rule indicated.

It remains to determine from the record whether any of the appellants are orphan asylums of the city and county of San Francisco, and whether St. Vincent Roman Catholic Orphan Asylum is such.

The most prominent idea of an asylum is, that it is a place of safety—a place of refuge, a retreat, a sanctuary. An orphan asylum, then, is a place of refuge for orphan children, a home. Children are naturally dependent, and all need a home and protection. Indigent orphans

have no home unless it is supplied by charity. To afford
such a home with support and protection orphan asylums
are provided by the humane. The asylum is undoubt-
edly the home. But these must be maintained by in-
dividuals or institutions. The management may be in
San Francisco and the home elsewhere, or *vice versa.*
Perhaps an asylum might be called an asylum of the
city and county of San Francisco because maintained
by the municipality, irrespective of the location of the
home.

So, too, if it were exclusively or in some special sense,
devoted to San Francisco orphans. No such San Fran-
cisco asylums are shown to exist.

San Francisco people, or corporations, might maintain
asylums in any part of the world, but those outside of
the city would not be orphan asylums of the city and
county of San Francisco in the sense in which those
words are used in the will. As there is no asylum pecu-
liarly devoted to the care of San Francisco orphans, this
benefaction must be confined to asylums whose home is
in San Francisco.

The San Francisco Ladies' Protection and Relief So-
ciety on its appeal makes two points: 1. The court erred
in holding that it is not an orphan asylum of the city
and county of San Francisco; 2. In holding that the
St. Vincent Roman Catholic Orphan Asylum is an orphan
asylum of the city and county of San Francisco.

The appellant society was incorporated on the elev-
enth day of August, 1854. As to the purposes of the
society the articles state: "The objects and purposes of
said society are to render protection and assistance to
sick and dependent women and children."

The declared purposes are sufficiently comprehensive
to enable the society to maintain a hospital, a school,
and an asylum, or either. The work actually done is
described by Mrs. Adams, one of the managers, as fol-
lows: "We have a home in San Francisco on Franklin
street, running from Post to Geary, and we carry on
there the work of an asylum for protecting, caring for,

and educating orphans, half-orphans, and abandoned children.   During the ten years last past I should think we have had at the home on an average monthly twenty whole orphans, one hundred and fifteen half orphans, and forty-two abandoned children.   It is called the San Francisco Ladies' Protection and Relief Society, because it was organized and has always been carried on by San Francisco ladies, and not because we have had under our care and protection from time to time one or more destitute women.   We have usually had at the home from one to three destitute women; they do a little work for the institution, and are given their living and a home.   I do not believe we have had altogether a dozen women there during the ten years last past.   We take children when they are from three to twelve years old, and keep them until we get homes for them."

Respondents admit that appellant maintains an asylum, but deny that it is distinctively an orphan asylum, although it will necessarily have orphans among its inmates.   It was not organized, and has not been conducted, they say, to maintain orphans as such, nor because they are orphans, but orphans are admitted because they are among the sick and dependent.

What this appellant does in this respect is precisely what all the other applicants to share in the bounty have done.   All, with the possible exception of the Protestant Orphan Asylum and the Hebrew Asylum, receive abandoned and destitute children, though not orphans.   And no asylum receives orphans merely because they are orphans as a charity.   Only the indigent are entitled to be so received.

The fact that the phrase " orphan asylum " does not occur in the name of the appellant is of no consequence. In *St. Luke's Home* v. *Association for Indigent Females*, 52 N. Y. 191, 11 Am. Rep. 697, the bequest was to a specified institution, and a mistake was made in the name.   There was no institution bearing the precise name.   In determining among different claimants which was entitled, naturally similarity of name was of first

importance, and was so because the testator had attempted to name the legatee. Here the bequest is to a class, and we must presume the testator had in his mind only the class. He does not seem to have cared which got his bequest further than that all the designated class should share it.

St. Vincent Roman Catholic Orphan Asylum is maintained by a corporation which, by its articles, appears to have been incorporated for " the administration of said temporalities of the said Roman Catholic church in the said diocese of San Francisco, and the management of the estate and property of said church."

To maintain an orphan asylum was not one of the expressed purposes of this corporation. It is said that the diocese extends from latitude 37° 13° north to 42° north, and from the Pacific ocean on the west to the Colorado river on the east. The extent and scope of this corporation is very great, and certainly it was not formed expressly to maintain such asylums, nor is such purpose disclosed in the articles. It is said, however, that it maintains several orphan asylums within the diocese, and its right to do so has never been questioned.

The appellant is actually maintaining an orphan asylum of the same precise character in this respect as those mentioned by the applicants. Unless its action were *ultra vires*, and perhaps even if it were, it must be rated as an orphan asylum of the city and county of San Francisco.

The St. Vincent Roman Catholic Orphan Asylum and the Bishop Armitage Church Orphanage stand, with reference to this bequest, in precisely the same position. The home of each is without the city and county, and each is managed by organizations within the city. Each receives most of its inmates from San Francisco, but neither confines its benefactions to the inhabitants of the city or in any way discriminates in their favor.

It is said that there is a difference in favor of St. Vincent because St. Joseph is an asylum of the city and

county of San Francisco for infant orphans, and that when boys in St. Joseph reach the age of seven they are sent to St. Vincent. But St. Joseph is separately incorporated, and has asserted a separate claim to a share of the bequest. If it is an asylum, it should have been so recognized, and allowed a share of the bequest. It has not appealed, and the facts in regard to it are not shown. We must presume that the court correctly held that it was not an asylum. If it were such, however, that would not help the claim of St. Vincent. It is said that St. Vincent is the largest asylum, and the only one controlled by the archbishop, which could claim the bounty. We recognize the beneficent character of the charity there administered, and its extent. All the claimants are worthy, and all efforts to share in the fund unselfish. But we are not authorized to select the most worthy charities, or to distribute the fund in a way which will be thought fair between different relig-ious denominations. It is not our function to distribute it at all, except by ascertaining, as best we may, who are the beneficiaries indicated in the will. Both of these institutions are most worthy, but neither maintains an orphan asylum in the city and county of San Fran-cisco, and only such are indicated in Pearsons' will.

The claim of the Boys' and Girls' Aid Society was, I think, properly denied. That society is by its charter empowered to maintain an orphan asylum, but it has not done so. It is a reformatory. Most of its inmates were committed to it under the provisions of section 1388 of the Penal Code. The superintendent, while on the stand, was asked to account for the others, and re-plied as follows: " The Society for the Prevention of Cruelty to Children sends them to us. A mother who can't support her child may bring it to us, and some-times a mother who has a boy who won't stay home, but runs away, brings him to us."

The Girls' Directory Orphan Asylum was incorpo-rated in January, 1894, some four years after Pearsons' death. Before that time a charity had been conducted

by some sisters of St. Francis. It was voluntary work, conducted without any special organization, or any statement of a formal plan of proceeding. They had a home, and received their first inmate May 22, 1888. She was discharged May 31, 1888. The next inmate was received June 16, 1888, and discharged August 6, 1888. It does not appear from the record that prior to Pearsons' death it was known as an orphan asylum. In the directory of 1887 it was published thus: "Girls' Directory, established in San Francisco in 1887. Objects: This home is a charitable institution where poor girls of all denominations can find shelter until work can be obtained, and also for poor abandoned children." It seems that the sisters did not authorize this publication, but it correctly described the charitable work performed by the sisters, so far as disclosed by the record. After Pearson's death in 1890 the charitable work increased, and, perhaps, it may be said the sisters were conducting an orphan asylum. At the time of Pearsons' death there were under the care of the sisters seventeen orphans and half-orphans. Why they were there, except that they were destitute and needy, the record does not show. The presumption is that the judge decided the matter correctly, and I do not think this appellant has shown error.

Counsel for this appellant, while claiming that even at the time of Pearsons' death these sisters were maintaining an orphan asylum, contends that the real question is whether, at the time of the distribution, the institution is maintaining such asylum. Manifestly, this cannot be so. The rights vested at the time of the testator's death. No new claimants who were not conducting orphan asylums when Pearsons died could come in and share in the fund, the right to which had become vested. Counsel suggests that an institution which was maintaining an asylum when Pearsons died might have ceased to do so before the decree of distribution was entered. What ought to be done in such a case, should it arise, will demand the serious consideration of the

court.    But the possibility that it may happen is not sufficient to change the rule that such legacies vest at the death of the testator.

The decree is reversed, and the cause remanded for a new trial.

McFARLAND, J., and HENSHAW, J., concurred.

Hearing in Bank denied.