ESTATE OF LEONCIE ESPITALLIER, DECEASED.

[No. 17,286 (N. S.); March, 1915.]

Will—Instrument Drawn by Layman—Interpretation.—A will drawn by a person not educated in the ordinary sense, nor skilled in the use of legal formulae, is not to be treated with the strictness that is applied to the work of a professional draftsman.

Will—Disposition of Entire Estate—Presumption.—A will, as such, raises the presumption that its maker intends to dispose of his or her entire estate, and not to die intestate as to a part; and the presumption is strengthened by the absence of a residuary clause.

Will—Omission of Word—Whether Invalidates.—The inadvertent omission of a word will not be allowed to defeat a will if the intention of the testator can be discovered from the entire document, and a reasonable reading of its text, and a consideration of all the circumstances.

Will—Interpretation—Supplying or Changing Words.—In the construction of wills the intention of the testator must govern, and in order to carry out this, as collected from the context, words may be, when necessary, supplied, transferred or changed.

Will—Dollar-Mark Before Legacy—Omission.—The omission of the dollar-mark before the figures of a legacy is frequent in wills, and is implied by courts construing them.

Will—Instrument in French Language—Kind of Money Bequeathed. If, in a will in the French language, there is an absence of express words or signs indicating the sort of money to which numerical figures used have reference, in respect of legacies, the word "dollars" or "francs" may be read into the will according to the aptness of either in the opinion of the court, judging from the connection and the circumstances.

Application for distribution.

P. A. Bergerot and A. P. Dessouslavy, for petitioner Arthur Queyrel, administrator with will annexed.

Titus, Creed, Jones & Dall, for Eli Queyrel, objecting.

Gerald C. Halsey, for Monsieur Heurck, also objecting.

COFFEY, J. Petitioner, after reciting the death of testatrix, which occurred May 3, 1914, the admission of her will to probate, and other antecedent facts of administration, and

the condition of the estate and its readiness for settlement and distribution, states that decedent was unmarried and left no children or other issue or father or mother, and that her only next of kin and sole heirs at law were her brothers Eli, Louis, and Arthur Queyrel; Rose Rougon, a sister; Antoine Ferdinand Queyrel, a nephew; children of a deceased brother, and Joseph, Paul and Gaston, other nephews, children of a deceased sister, asks for distribution to himself and Benjamin Queyrel, not named but described in the will as "my cousin at Grenoble," and, averring that the attempted legacies to the other persons named are void and of no testamentary effect, prays that the remainder of the estate be distributed to the heirs at law.

This will is of the most informal character, written in the native language of the testatrix, except as to the word or abbreviation "dol." at the end of the first bequest. It is entirely in her handwriting, and is as follows, with translation:

"Le testament qui
et dans ma malle
n'est pas bon
Je laisse a mon frere
Arthur 500 dol.
a mon frere Eli 1000.
a mon cousin a grenoble
500 fr.
Monsieur Heurck
1500
    San Francisco le
    2 Mai 1914
                    "LEONCIE ESPITALLIER."

A translation of said will into the English language is as follows:

"The testament which is in my trunk is not good.
I leave to my brother Arthur 500 dollars.
To my brother Eli 1000.
To my cousin at Grenoble 500 fr.
Monsieur Heurck 1500.
San Francisco May 2, 1914.
                    "LEONCIE ESPITALLIER."

The only question involved is, whether effect can be given to the bequests to Eli Queyrel and Monsieur Heurck. The evidence shows that all the legatees named in the instrument were residents of this county except one residing at Grenoble, France.

Testatrix was a resident of San Francisco at the date of the will, and had resided here for many years prior thereto. Her fortune consisted of a deposit in the French-American Savings Bank, amounting to about $3,900. After paying all charges and expenses of administration, the balance expressed in American money amounts to $3,116.09. The bank account denotes dollars.

Petitioner contends that the so-called bequests to Eli Queyrel and Monsieur Heurck are void for uncertainty; that rules of construction may only be invoked to ascertain the meaning of the language actually used; and that an omitted word, if it can be supplied by construction at all, can be supplied only where such omitted word is manifest and certain. He claims that this case is not so much of an uncertainty arising upon the face of the will, as failure to complete the execution.

There are certain rules in construing wills that are axiomatic and need no citations, although in this case counsel have furnished an abundance of authorities to support their respective contentions.

We must take the document as a whole and endeavor to sustain the evident purpose of testatrix by a sensible and reasonable construction, rather than by a strained, artificial and technical interpretation to defeat her manifest design.

It must be premised that this document was drawn by a person, if not ignorant or illiterate, not educated in the ordinary sense, certainly not skilled in the use of legal formulae; and it is therefore not to be treated with the strictness that is applied to the work of a professional draftsman.

The instrument should be taken as a whole and not subjected to the strain of a construction that would force the entire purpose out of the natural channel into the narrow legal groove in which the mind of testatrix was unaccustomed to travel.

It is the duty of the court to look for general intent, to put itself in the place of testatrix, to regard coexistent circumstances, and, if a technical construction is at variance with the obvious general intention, to apply a rule of interpretation which will carry out the design of testatrix and give to her language its ordinary effect: Estate of Pearsons, 113 Cal. 577, 45 Pac. 849, 1062.

This is a mere statement of the universal rule in such cases.

But it is said here that interpretation of words used or construction of language employed is one thing, and insertion of words or phrases omitted is quite another matter, and that the court here is asked to insert material expressions necessary to supply testamentary inadequacy, or to make a new will, as to certain attempted legacies which otherwise would fail because testatrix did not designate fully the character of her benefactions.

This is the whole burden of the contention of petitioner Arthur Queyrel; that, because of the omission of the monetary mark or word in the legacies to Eli Queyrel and Monsieur Heurck, testator's attempt at a benefaction to either of them is ineffectual.

"In case of uncertainty arising upon the face of a will, as to the application of any of its provisions, the testator's intention is to be ascertained from the words of the will, taking into view the circumstances under which it was made, exclusive of his oral declarations": Civil Code, sec. 1318.

"In order that a specific devise or bequest shall be effective it is necessary that the subject matter thereof shall be so described as to make it sufficiently certain what was the testator's intention; and when the gift is a pecuniary one it is necessary that the amount intended shall be definite and certain": 40 Am. & Eng. Ency. 694.

"Where it is impossible to ascertain the subject matter or the objects of a gift it will be void for uncertainty": 40 Am. & Eng. Ency. 693.

"Where the testator's intention is manifest from the context of the will and surrounding circumstances, but is endangered and obscured by inapt and inaccurate modes of expression, the language will be subordinated to the intention . . . This

rule, however, applies only where it is necessary to effectuate
the testator's intention, which is clearly apparent, but has
been defectively expressed in the will. . . . Furthermore, in
supplying words in a will, such words only can be supplied
as it is evident the testator intended to use'': 40 Cyc. 1399.

In Mitchell v. Donohoe, 100 Cal. 202, 208, 38 Am. St. Rep.
279, 34 Pac. 614, it is said: ''Courts, in reading wills, always
supply obviously omitted words, wherever the word omitted
is apparent, and no other word will supply the defect.

''A word that has been manifestly omitted . . . will be
supplied'': Estate of Stratton, 112 Cal. 518, 44 Pac. 1028.

In considering this matter we must always bear in mind
our own code sections, one of which says that the words of
a will are to receive an interpretation which will give to
every expression some effect, rather than one which will
render any of the expressions inoperative: Civil Code, sec.
1325.

The very fact of making a will raises a presumption that
the testatrix intended to dispose of all of her property.

A will is an instrument by which a person makes a disposi-
tion of his property to take effect after his death. A will
when it operates upon personal property is sometimes called a
''testament,'' in foreign law usually so, but the more general
denomination when it embraces both species of estate is that
of ''last will and testament.''

In this case personal property alone is in question. Tes-
tatrix left only a deposit in dollars in the savings bank, and
the word she used to describe her disposition is ''testament,''
the term most appropriate for her purpose in the language of
her own original country. The testament she left in her
trunk she declared not good, and now she leaves her posses-
sions as set forth in the new instrument, to certain indicated
persons, as the only objects of her bounty; no others named;
and no residuary clause. No executor named.

The presumption is, as has been time and again stated by
our appellate courts, that a testatrix intends to dispose of her
entire estate and not to die intestate as to any part thereof,
and the will should be so construed unless this presumption
is clearly rebutted by the provisions of the will or by evi-

dence to the contrary, and the fact that there is no residuary clause in this will strengthens the presumption.

"A will is to be construed according to the intention of the testator; and where his intention cannot have effect to its full extent, it must have effect as far as possible. The intention is to be ascertained from the words of the will, taking into view the facts and circumstances under which it was made, if shown; otherwise, the will must be its own interpreter. The will must have a liberal construction, and a construction thereof favorable to testacy will always obtain when the language used reasonably admits of such construction": McClellan v. Weaver, 4 Cal. App. 593, 88 Pac. 646.

We should have a sensible and reasonable construction, not a forced and technical one; a liberal interpretation, not a narrow or strained endeavor to wrest the context from the circumstances and to pervert the purpose of the testatrix.

While she may not have been an educated woman, the testatrix was intelligent and sufficiently versed in language to understand what she desired to do with her money. She used apt terms to express her meaning, except as to filling out the words or signs indicating in two instances the monetary unit. Did she mean dollars or francs, or did she design to make a vain bequest? This latter cannot be presumed. The context and the circumstances may be taken together to supply the casual omission.

Standing in its present form there might be uncertainty as to the amounts of the bequests; but the inadvertent omission of a word will not be allowed to defeat the will, if the intention of the testator can be discovered from the entire document and a reasonable reading of its text and a consideration of the circumstances.

Testatrix certainly intended to give her brother Eli and Monsieur Heurck something. She did not intend to die intestate, partially or totally, and the law does not favor any construction leading to such result, if it can reasonably or possibly be avoided: Le Breton v. Cook, 107 Cal. 416, 40 Pac. 552.

Where it is possible for the court upon a reading of the whole will to reach the conclusion that the testatrix meant to

give a certain amount to beneficiaries, where she did not use express or formal words, the court should supply the defect by implication, and so mold the language as to carry out the intention which it is of opinion the instrument sufficiently declared, and our code authorizes this mode of interpretation: Civil Code, sec. 1340.

It is laid down that, in certain cases, in order to reach the obvious general intent of the testatrix, implications may supply verbal omissions: Estate of Callaghan, 119 Cal. 571, 51 Pac. 860, 39 L. R. A. 689.

Inadvertent omissions may be supplied. This construction is in consonance with the entire will, and if it were not so applied, it is apparent that the intention of the testatrix would be defeated. This has been done in many instances for the purpose of effectuating the true intention of the testatrix: Bacon v. Nichols, 47 Colo. 31, 105 Pac. 1082.

The intention of the testatrix apparent in the will itself must govern, and in order to execute her design, as collected from the context, words may, when necessary, be supplied, transposed or changed.

This is not making a new will; it is in furtherance of the testamentary purpose of the testatrix deducible from the instrument in probate.

Cases are numerous on this point. A few citations will suffice.

A bequest of "5000." in connection with other money legacies may be read $5,000: Page on Wills, 559, citing Ross v. Kiger, 42 W. Va. 402, 26 S. E. 193; 30 Am. & Eng. Ency. Law, 690.

Where it is evident from the context that the testator's intention had been inaccurately or incompletely expressed by the words used and it is also equally evident that words had been omitted, these words may be supplied in order that the testator's intention may be given effect: In re Schweigert's Will, 17 Misc. Rep. 186, 40 N. Y. Supp. 979.

The sum of "100." each was construed to mean $100 each, the omitted word "$" being supplied by the court. The court said: "In construing wills, the court may transpose, reject, or supply words so that it will express the intention

of the testator. . . . The meaning of the testator must be ascertained, if possible, however difficult or obscure the language, and it is only after every effort to discover that meaning has failed that the provision can be wholly rejected": Sessoms v. Sessoms, 22 N. C. 453.

Where a will in connection with several legacies, in dollars, contained a bequest of "500," the word "$" was implied by the court: Cooper v. Cooper, 7 Houst. (Del.) 488, 31 Atl. 1043. This case holds that where the words are omitted, they may be supplied to give the intention of the testator full meaning: Gaston's Estate, 188 Pa. 374, 68 Am. St. Rep. 874, 41 Atl. 529.

In this case the will was admitted to probate and parol evidence allowed to interpret it, where the bequests were indefinite and many bequests of money had the dollar sign omitted.

Petitioner Arthur Queyrel seeks to break the force of these cases by claiming that the principles upon which they were decided do not apply here.

In those cases, it is argued, the courts were considering "wills written in the English language by English-speaking people, while here the will is written in the French language by a native of France, who had spent in that country her early and formative years and had lived there more than half her life, coming to this country when well past her majority. Even if the will were otherwise silent, it is apparent that such a person might well think and compute in terms of foreign money, so that, in ascertaining her intention, it would not be obvious that 'dollars' rather than 'francs' are what she had in mind, but here the will contains bequests in both 'francs' and 'dollars.'

"In the Sessoms and Schweigert cases,'dollars'was supplied, not as the result of a choice between 'dollars' and some other word, but because, and only because, the courts did not entertain even a momentary doubt that anything but 'dollars' could have been intended. Here, the will itself is uncertain and incomplete. The context especially in the alleged bequest to Mr. Heurck, makes it likely that 'francs' were intended; opposing counsel claims that, from a consideration of the testatrix' cir-

cumstances, 'dollars' were what she meant. It is clear, therefore, that what the court is asked to do is not (as was done in the Sessoms and Schweigert cases, where the context was such that the omitted word was plain, certain, manifest and unmistakable), to supply an obvious word which had been omitted, but to conjecture what the testatrix would have done had she completed the will, to express that which she has left unexpressed, and thereupon to piece out and complete a defective and imperfect will. This is not to 'construe' the will; it is to make a will.''

This argument is ingenious but futile, and does not take in the spirit and substance of the rule laid down with such force and breadth by the authorities.

It is apparent that the testatrix was thinking and computing with reference to her cash in bank in terms of American money so far as the legatees resident in America were concerned. She had long resided here, and it is clearly to be inferred that she meant to give dollars to her brothers Arthur and Eli and friend Heurck here, and francs to her cousin in Grenoble. For these living here she chose the domestic standard, for the one in France the foreign standard. This was natural, and seemed to perfect her purpose of disposing of all of her property, and so it turns out.

It is not difficult to demonstrate this intent and result.

| | |
|---|---|
| The amount left by her was cash | $3,984.87 |
| Disbursements | 868.78 |
| Balance | $3,116.09 |

the amount to be distributed.

If we accept the view of petitioner, Arthur receives under will, $500; Eli, nothing; cousin in Grenoble, 500 francs, or in American money, $100; Monsieur Heurck, nothing.

Thus by the will, according to this contention, testatrix disposes of only $600, out of $3,116, and is intestate as to $2,516.

If, on the other hand, we conclude that she intended to give dollars to the persons living here and francs to the Grenoble cousin, we have:

| | |
|---|---:|
| Arthur.......... .......... .. .............. | $ 500.00 |
| Eli....... ....... .... .............. | 1,000.00 |
| Grenoble cousin 500 francs or........... | 100.00 |
| Monsieur Heurck........ ...... ....... | 1,500.00 |
| | $3,100.00 |

tantamount to a total distribution, practically no balance remaining, which seems to correspond to her design.

'The court is of opinion that to hold that she had in mind any other disposition of her money, would be to violate what is the natural and reasonable intendment of her testament, and that it has the power and that it is its duty, to decide that she meant to bequeath to Arthur Queyrel, $500; to Eli Queyrel, $1,000; to the cousin at Grenoble, 500 francs; to Monsieur Heurck, $1,500.

There are other circumstances in evidence, properly cognizable by the court, to support this decision, but it is not necessary to advert to them further than to say that they fortify the conclusion reached after a careful examination of all the points presented.