[Civ. No. 7895. First Appellate District, Division Two.—June 17, 1931.]

In the Matter of the Estate of EDWARD J. A. ZILKE, etc., Deceased. LOUISE FREYER et al., Appellants, v. SAN FRANCISCO PROTESTANT ORPHANAGE SOCIETY et al., Respondents.

William L. Southwell and Walter Loewy for Appellants.

D. C. Murphy, H. U. Brandenstein, C. W. Slack, J. S. Hutchinson, J. W. Henderson, Elliott McAllister and W. E. Cashman for Respondents.

SPENCE, J.—Appellants are the sister and the several nephews and nieces of the deceased. Respondents are seven orphan asylums of the city and county of San Francisco. This appeal is taken upon a bill of exceptions from that portion of the decree of final distribution which distributed the entire estate in equal shares to the seven respondents.

The olographic will of the deceased, which was duly admitted to probate, read as follows:

"When I am dead I wont everyting to go to Offens home of San Francisco. You find everyting in box 3608 Humbolt Bank. This is my last Will.

"March 20, 1927.    EDWARD J. A. ZILKE."

Upon the hearing of the petition for distribution it was stipulated that appellants are the heirs at law and next of kin of the deceased and "that the following organizations are orphan asylums and that said orphan asylums and each of them are situate in the City and County of San Francisco—(naming the seven respondents)". No further evidence on the subject was offered and the decree was entered as above indicated. In the briefs it is assumed by the parties that there is no institution, association, or corporation bearing the name "Offens home of San-Francisco" or "Orphans' Home of San Francisco," and it is further assumed that the seven respondents conduct all of the orphans' homes in San Francisco. We find no evidence in the record to justify these assumptions, but even if these facts be conceded, we are still of the opinion that the decree must be reversed.

If it appeared that there was no institution bearing the name used in the will, and that there were seven institutions conducted as orphans' homes in San Francisco, a latent ambiguity arose, which ambiguity might have been removed by other evidence. In *Taylor* v. *McCowen*, 154 Cal. 798 [99 Pac. 351], the court at page 802 quoted with approval the following language from *Patch* v. *White*, 117 U. S. 210 [29 L. Ed. 860, 6 Sup. Ct. Rep. 617, see, also, Rose's U. S. Notes] : "It is settled doctrine that as a latent ambiguity is only disclosed by extrinsic evidence, it may be removed by extrinsic evidence. Such an ambiguity may arise upon a will, either when it names a person as the object of a gift, or a thing as the subject of it, and there are two persons or things that answer the name or description; or . . . " No evidence was offered to remove the ambiguity in the present case and we are compelled to resort to the terms of the will alone in an effort to ascertain the intention of the testator. (Civ Code, sec. 1318.) Under these circumstances the question of the propriety of the

decree is solely a question of law. (*Estate of Langdon,* 129 Cal. 451 [62 Pac. 73].)

It is a statutory rule of construction that "The words of a will are to be taken in their ordinary and grammatical sense, unless a clear intention to use them in another sense can be collected, and that other can be ascertained." (Civ. Code, sec. 1324.) If the will had provided that the estate should go to the orphans' "homes" of San Francisco, we do not doubt that the decree entered would have been proper, assuming, of course, that respondents represented all of the institutions falling in that class. (See *Estate of Pearsons,* 113 Cal. 577 [45 Pac. 849, 1062], and *Estate of Pearsons,* 125 Cal. 285 [57 Pac. 1015].) The will, however, provided that the estate should go to the orphans' "home" of San Francisco. Counsel for respondents state that "The case turns solely on the importance of the omission of the letter 's' from the word 'home,'" and that such omission is "frail ground indeed for the argument that the will should be invalidated and the charities deprived of the testator's intended benefaction". But who can say from the terms of the will that the letter "s" was not intentionally omitted and that the testator did not have a particular home in mind as the recipient of his benefaction? This appears to be quite probable when we consider that the testator employed a capital letter at the beginning of the word "Offens", which may be some indication that he was endeavoring to employ the name of some one institution. In any event he used the singular and not the plural and we are of the opinion that the language used is insufficient to support a decree in favor of all orphans' homes or in favor of any particular orphans' home in the absence of some evidence other than the will itself to show what the testator's intention was. The situation before us is much the same as though the testator had provided in his will that his entire estate should go to his "niece" and the court had distributed the estate to all of his "nieces" solely upon the showing that there was more than one person answering that description. In such case it is clear that the decree could not stand. It is true, as contended by respondents, that misspelling and grammatical inaccuracies in a will are ordinarily of no consequence, but this rule is properly qualified in the citation quoted by respondents as follows: "Gram-

matical inaccuracies are immaterial, *provided the intention appears . . .* " (Italics ours.) (17 Am. & Eng. Ency. of Law, 2d ed., p. 20.)

It may be that the testator intended to leave his property in equal shares to all orphans' homes in San Francisco as a class, or, on the other hand, it may be (and it appears more likely) that he intended a bequest to some particular orphans' home. Whatever his actual intention may have been, he failed to express it with reasonable certainty, and it is impossible to ascertain it from the will itself. Upon the record before us the decree is based upon speculation and conjecture as to what his intention was. As was said in *Estate of Hoytema,* 180 Cal. 430, at page 432 [181 Pac. 645], "Courts are not permitted, in order to avoid a conclusion of intestacy, to adopt a construction based on conjecture as to what the testator may have intended, although not expressed." And again on page 433, "Only through speculation and conjecture may the construction contended for by appellants be confirmed. And this cannot be countenanced in view of the cardinal rule to the effect that in the interpretation of wills it is not the probable intent which may have existed in the mind of the testatrix which prevails, but only that which is expressed in the language of the will."

For the foregoing reasons the portion of the decree appealed from is reversed.

Nourse, P. J., and Sturtevant, J., concurred.

'A petition for a rehearing of this cause was denied by the District Court of Appeal on July 17, 1931, and a petition by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 13, 1931.