## Richmond.

### HAWKINS v. GARLAND'S ADM'R ET ALS.

#### January 19, 1882.

1. WILL—*Latent ambiguity—Extrinsic evidence.*—Wills are explainable by the light of surrounding circumstances. Latent ambiguity is that which seems certain, for anything that appears on the face of the will, but there is some collateral matter, *dehors* the will, that causes ambiguity. Extraneous evidence is admissible, both to show the existence of the latent ambiguity and to remove it and disclose the testator's meaning.
2. IDEM—IDEM.—In case here testator says: "I give to each of my name-sakes, S G son of S G S, S G son of S G W, S G son of S G, and *S G son of Captain J F S,* a bond of $1,000 of S. S. railroad."

HELD:

Extraneous evidence is admissible to show that no person answering the description of "S G, son of Captain J F S," existed or was intended as the object of the testator's bounty, but that a person known to testator as "S G, son of Captain J F H," was intended as the object of his bounty.

The case is fully set forth in the opinion of the court.

*L. D. Haymond, J. B. Brockenbrough,* for appellant.

1. Latent ambiguity can only be raised by parol proof, and dissolved by same. It does not appear on the face of the words used, and its existence is unknown until those words are brought into contact with collateral facts. Broom Leg. Max. 411; 2 Greenl. Ev. § 297; Bacon's Max. 23; *Baugh* v. *Reed,* 11 Ves. Jr. 257; *Delmare* v. *Robello,* Ib. 412, *et seq.; Maund's Adm'r* v. *McPhail,* 10 Leigh, 199; *Beaumont* v. *Fell,* 2 Peene Wms. 141; *Smith* v. *Bell,* 6 Peters, 68; *Allen* v. *Allen,* 12 A. & E. 450 (40 E. C. L. 227), Wigram,

*passim,* and cases therein cited; *Careless* v. *Careless,* 1 Mer. 384; *Roy's Ex'ors* v. *Rowzie, &c.,* 25 Gratt. 599; *Beadsley's Adm'r* v. *Am. H. M'y Society,* 45 Conn.; *Dunham* v. *Averill,* Ib. 61.

2. A mere misdescription of the legatee does not render a legacy void, unless the ambiguity is such that it is impossible to ascertain either from the will itself, or from proofs *dehors* the will, who was intended as the object of the testator's bounty. *Smith* v. *Smith,* 4 Page, 271; *Wigram,* pp. 21, 23, 177–8; *Reno* v. *Davis,* 4 H. & M. 388; 1 Ves. Jr. 257, 266, 344, 412; *Man* v. *Man,* 14 John R. 1; *Still* v. *Host,* 6 Madd. 192; *Hampshire* v. *Pierce,* 2 Ver. Jr. 218; *Doe* v. *Hathwaite,* 3 B. & A. 682; *Thomas* v. *Thomas,* 6 Tenn. R., Wigram, 230–1; *Crawford* v. *Janett,* 2 Leigh, 630; *Miars* v. *Belgood,* 9 Leigh, 374.

3. The evidence abundantly shows that no Samuel Garland, son of Captain John F. Slaughter, existed or was intended as the object of the testator's bounty, but that that object was Samuel Garland, son of Captain John F. Hawkins, the appellant.

*Jubal A. Early,* for appellees.

CHRISTIAN, J., delivered the opinion of the court.

This case is before us on appeal from a decree of the circuit court of the city of Lynchburg.

The facts disclosed by the record, so far as necessary to be noticed in this opinion, are as follows:

Samuel Garland, Sr., departed this life in November, 1861. He left a will written wholly by himself, which bears date the 7th of December, 1857. He left a very large estate, valued at nearly $800,000. He left a widow, but no issue. His next of kin consisted of a number of nephews and nieces, to all of whom he left liberal bequests.

The question in this case arises under the 15th clause of said will, which in its numerous provisions is the only one necessary to be noticed in deciding the controversy in the court below, and which is now brought before this court for review. That clause of the will is in these words: "15th. I give to each of my *name-sakes*, Samuel G. Slaughter, son of Ch. R. Slaughter; Samuel G. White, son of Samuel G. White; Samuel, son of S. Garland, Jr.; and *Samuel G., son of Captain John F. Slaughter*, a bond of one thousand dollars of S. S. railroad."

The record further conclusively shows that at the date of the will, to-wit, the 7th of December, 1857, there was no such person in existence as "Samuel G. Slaughter, son of Captain John F. Slaughter," and no such person was in existence until three or four years after the date of said will. *Then* there was born to John F. Slaughter a son whom he named Samuel G. Slaughter.

The proof in the cause further shows conclusively that John F. Slaughter never was known to the testator, or called by him "Captain" John F. Slaughter, and that he had no such title, and was known and called by the testator simply Jack Slaughter. He had no such title as *captain*, was never known or called as such either by the testator or any other person, and at the date of the will he had no son named "Samuel G. Slaughter."

All this is admitted by the answer of John F. Slaughter.

Without going further into the proofs in the cause it is manifest that there was a misdescription of the person named in the 15th clause of the will as a legatee of the bond of $1,000 in the said clause mentioned.

The legacy is to a *name-sake*. That name-sake is described as *Samuel G., son of Capt. John F. Slaughter*. There was no such name-sake in existence at the time of the execution of the will. There was no such person known to the testator as *Capt.* John F. Slaughter, and John F. Slaughter, what-

ever his title, had no such son, and did not for years after-wards have a son named after the testator, Samuel Garland.

The case presented upon these facts is one of a latent ambiguity within the very definition of the authorities.

As defined by Lord Bacon, " a latent ambiguity is that which seemeth certain and without ambiguity for any thing that appeareth on the deed or instrument; but there is some collateral matter· out of the deed that breedeth the ambiguity." See Bacon's Law Torts. p. 99.

A latent ambiguity therefore exists in a sentence or ex-pression only when the real meaning or intention of the writer is hidden or concealed. It does not appear on the face of the words used, nor is its existence known until those words are brought into contact with collateral facts. It is only when you come to apply the words, bringing them alongside the facts which existed when used, and to read them in the exact light in which they were written that you make up the latent ambiguity, if one exists. Ba-con's Max. 23; Geen. Ev. §§ 297, 298 ; Brown's Legal Maxims, p. 441.

The case before us, therefore, is one of latent ambiguity where there is nothing ambiguous in the words used, but where the extraneous evidence shows that the person named in the testator's will as the object of the testator's bounty, is not in fact the person to whom the testator in-tended to make the bequest. It was simply a misdescrip-tion of that person, made inadvertently by a *slip of the pen* in writing the name and designation. This is the more manifest when it appears that in the testator's will he made another mistake as to the name designating the ob-ject of his bounty, and no controversy is made with respect to the mistake of the name in that case, where he desig-nates the legatee as Samuel *Garland*, brother of Ch. R. Slaughter, when it seems manifest he meant to write Sam-uel Slaughter. (See 14th clause of will.)

Where there is a misdescription in a will, either of the *person* to whom the devise or legacy is given, or of the subject matter of the bequest or devise, extraneous evidence is always admissible to show the person who was the object of the testator's bounty, or the property actually devised or bequeathed. When there is doubt as to whom the legacy or devise was intended, or where there is a misdescription of the property devised or bequeathed, extraneous evidence is always admissible to show the real party to whom the devise or bequest is made, and the specific property which the testator intended to devise or bequeath. This is familiar law, and sustained by all the authorities.

I think it must be conceded that the extraneous evidence clearly shows that in the testator's will there was a misdescription of the legatee, one of the subjects of his bounty, when he designates him as "Samuel G., son of Captain John F. Slaughter," and especially when he designates him as one of his *name-sakes*. As already seen, there was no such person as "Samuel G. Slaughter, son of Captain John F. Slaughter," in existence at the time of the execution of the will. I think, therefore, that it is perfectly plain from the will and the evidence in the cause that Samuel G. Slaughter is not entitled to receive the legacy of $1,000, and that he, upon the proofs in the cause, does not answer to the description contained in the 15th clause of the will of the testator.

I think, upon the record, that this is too plain for argument, and the concession in the answer of John F. Slaughter that he did not have any son named after the testator, and not until years after the date of the will, is conclusive of the case in this respect.

The fact that years after the execution of the will he had a son whom he named after the testator does not at all affect the construction of the will. Properly to construe that will, we must put ourselves in the place of the testa-

tator and inquire who were the objects of his bounty under the 15th clause of his will. Assuming that position, we are bound to say that the son of John F. Slaughter did not answer to the description of the testator as his *name-sake,* for he was not then born, and not born until years afterwards; and he was not the son of *Captain* John F. Slaughter, for there was no such person known to the testator. It is very plain, therefore, that the son of Captain John F. Slaughter is not entitled to receive this legacy for the reasons already stated, there being plainly a misdescription of the person to whom the legacy was given in the 15th clause of said will.

But the main and important question is, *to whom* shall this legacy be paid? Shall it lapse because there is no hand to receive it, and no legatee to whom it shall be paid?

Courts are always averse to permitting a legacy to lapse if it can be found who was the legatee intended by the testator to be the object of his bounty. In this respect, as in all other questions concerning the contruction of wills, the prime object is to find out the intention of the testator, and the courts will never permit a legacy to lapse if, upon a fair construction of the will and seeking to carry out the intention of the testator, it can find who was the legatee the testator intended to make the object of his bounty.

In this case it is plain that a latent ambiguity exists and is established by extrinsic evidence. Such ambiguity thus established by evidence *dehors* the will may be removed in the same manner by extrinsic evidence.

I can find no case, English or American, after a careful examination of the authorities, where after a latent ambiguity has been certainly established, evidence was rejected which tended to show the real intention of the testator and which was necessary to carry that intention into effect.

· As was said by Lord Thurlow in *Baugh* v. *Read,* 1 Ves. Jr. 257, "where a testator uses certain words which *prima facie* give a clear account the same fact that enables you to prove that there was a latent ambiguity enables you to prove also what was his real intention."

In the old case of *Beaumont* v. *Fell,* 2 Peene·Williams, 141,· which was one of the first cases in which parol evidence was admitted in aid of construction, it was held that whenever the testimony raised an ambiguity, evidence *dehors* the will was received to show what the words used really and· in fact meant.

This case, often commented upon by the English judges, have never been departed from, but the principle therein declared has been universally recognized. See Jarman on Wills, ch. 14, 3d Am. Ed., and numerous cases there cited;· *Good* v. *Needs,* F. M. & W. 139; *Hiscock* v. *Hiscock,* 5 M. & W.· 863; Wynn, 252, and cases there cited; *Careless* v. *Careless,* 1· Mer. 384.

In the last named case it was held that "identification· of the devisee is virtually left wholly to parol."

That case is singularly like the one under consideration.· The legacy there was to the testator's nephew Robert, the· son of Joseph C. The testator had two nephews called· Robert, the one the son of his brother John C., the other,· the son of his brother Thomas C. The testator had no' brother Joseph, nor was there any other Joseph C. This· was held by Sir William Grant to be a latent ambiguity, and that the writing of the word Joseph instead of Thomas was a mere slip of the pen. See also in this connection Jarman on Wills, ch. 14, 3d Amer. Ed. 361; 2 Taylor on Ev. §§ 1220, 1226; Wygram on Wills, 285-6. See also the leading case of *Hiscock* v. *Hiscock,* 5 M. & W. 863, in which the principal English cases on the subject are elaborately reviewed by Lord Abinger, and where it was held that evidence was admissible not for explaining the words or meaning of the

will, but either to supply some deficiency or remove some obscurity or ambiguity. Where, for instance, the devise was on the face of it perfect and intelligible, but from some of the circumstances admitted in proof an ambiguity arose as to which of the two or more persons or things the testator intended to express.

The cases in our own court establish the principle settled by the English court that where a latent ambiguity has been established by evidence *dehors* the will, extrinsic evidence may also be received to remove the ambiguity and to show the real intention of the testator.

In *Maud's Adm'r* v. *McPhail*, 10 Leigh, 199, the testator devised all his negroes "to the agent of The New Colonization Society in Africa." Parol evidence was admitted to show that the society meant was "The American Colonization Society," and that McPhail was the agent of that society, and that he was the person to whom the bequest by the testator was intended to be given. And that intention was proved in this case by the declarations of the testator made to a witness, and it was upon this evidence that the legacy was upheld by this court and a decree rendered delivering the slaves to McPhail as the agent of "The American Colonization Society."

In the case of *Roy's Ex'or* v. *Rowzie*, decided by this court as late as 1874, it was held that a bequest to "The Baptist Theological Seminary in South Carolina" was, upon evidence, intended by the testatrix to be a bequest to "The Southern Baptist Theological Seminary"; and one of the principles emphatically declared in that case was that "Where the person or object or subject referred to in a bequest is uncertain, or does not answer precisely the description given them in the will, or where there are two or more objects or subjects which answer equally the description, resort must be had to parol evidence and the surrounding circumstances to show what the testator intended by the

expressions which he used; and if such intention is so ascertained with sufficient certainty the bequest is valid."

Judge Moncure, in delivering the unanimous opinion of the court in this case, said: "Parol evidence is always admissible and even necessary to lead us to the person or object and subject referred to in a bequest. The court of construction, with the testator's will in hand, looks for the object of his bounty and the thing intended to be given, and expects them to answer precisely the terms of description given of them in the will. Generally they do, and there is no difficulty. Often they do not. * * * In such cases resort must be had to parol evidence and the surrounding circumstances to show what the testator intended by the expressions which he used; and almost always his intention is thus ascertained with sufficient, if not with unerring, certainty. If it cannot be, the bequest must then fail of effect; but the court is always reluctant so to declare. It will not require that the object or subject shall have every ear-mark given to it by the testator. Nay, it may in some respects have different ear-marks, and yet the description contained in the bequest may be sufficient to give it effect. *Falso demonstratis non nocet cum de corpore constat,* is a maxim which expresses a rule of construction to which the court has frequent recourse in such cases."

Applying these principles to the case before us, I think it is clear that (there being no such person as Samuel G., son of Captain John F. Slaughter, in existence at the time of the execution of the will), the evidence in the cause plainly points to the appellant, Samuel G. Hawkins, as the object of the testator's bounty and the person to whom he intended to give the legacy of $1,000 by the fifteenth clause of his will.

He was the *name-sake* of the testator, named Samuel Garland. He was the son of his intimate friend, Capt. John F. Hawkins. He answers to the description in the will—

as (1) my name-sake, Samuel G.; (2) as the son of Capt. John F.

Now, if the word Hawkins had been written instead of "Slaughter," the appellant would have answered the full description of the person intended as one of his legatees.

It is manifest, from the evidence of the testator's widow and his relative and intimate friend and counsel, Judge Garland—whose evidence we think admissible after the establishment of the latent ambiguity heretofore referred to—that the testator intended to write the words Samuel G., son of Capt. John F. Hawkins, instead of the words Samuel G., son of Capt. John F. Slaughter; and that it was a mere slip of the pen when the word Slaughter was written instead of Hawkins, as in the case of *Careless* v. *Careless* (*supra*), the word Joseph was said by Sir William Grant to be a slip of the pen for John. The venerable Judge Garland, the intimate friend of the testator, was told by the testator that Capt. John Hawkins had a son named after him, and that he had selected three or four of his *name-sakes* to whom he had given $1,000 each, and he is positive that Samuel Garland Hawkins was one of the name-sakes mentioned by him. This is confirmed by the evidence of the widow of Samuel Garland.

The writing of the name of *Slaughter* instead of *Hawkins* is the more manifest when it appears that the name of Slaughter occurs seven times in the will of the testator as different devisees and legatees.

And it is a pregnant fact that, except in the fifteenth clause, John F. Slaughter is never spoken of as *Capt.* John F. Slaughter, nor did the testator in his lifetime ever call him by that title. But, on the other hand, John F. Hawkins was always known and called by the testator and other persons as "Captain," which was in fact his title.

I am of opinion, therefore, that inasmuch as at the time of the execution of the will there was no such person in

existence as "Samuel G., son of Capt. John F. Slaughter," he, it is plain, could not take the legacy. And I think it is equally clear upon the evidence that the person to whom the testator intended to give, and did in fact give, the legacy mentioned in the fifteenth clause of the will was Samuel G., son of Capt. John F. Hawkins, the appellant in this cause, and that the said legacy ought to be decreed to him.

I am, therefore, of opinion that the decree of the said circuit court of Lynchburg be reversed.

DECREE REVERSED.