ADALINE M. FAULKNER & another *vs.* NATIONAL SAILORS' HOME & another.

Middlesex. December 2, 3, 1891. — January 19, 1892.

Present: HOLMES, MORTON, LATHROP, & BARKER, JJ.

*Will — Name of Charity — Intention of Testator.*

A testator, by his will, dated in 1878, gave a pecuniary legacy "to the Sailors' Home in Boston." The Boston Ladies' Bethel Society, which was incorporated in 1855 "to promote piety and the worship of God among seamen," and was supported by the Baptist churches in the city and vicinity, its chaplain being a prominent clergyman of that denomination, in 1865 began to raise a fund for a sailors' home, and made public appeals therefor. The testator was a prominent Baptist, and until 1864 a deacon of a church represented in the society's management. An appeal for legacies for this fund was contained in a life of the chaplain printed in 1874, a copy of which was in the testator's library, and he was interested in the chaplain and his work, and knew of this fund and the appeal. In 1884, two years before the testator's death, the society established and continued to maintain a sailors' home in Boston. The National Sailors' Home founded a home for sailors discharged from the naval service in Quincy in 1866, but its trustees were largely Boston men and their meetings were held there, and its own and its treasurer's office and its address were also in Boston, and various matters preparatory to admission to the home were also attended to there and outside aid there given. It was the only institution popularly known in Boston as the "Sailors' Home," except a sailors' boarding-house which ceased to exist in 1872 or 1873. On a bill in equity for instructions as to the disposition of the legacy, it was not shown that the testator had any knowledge of the National Sailors' Home. *Held,* that the testator's intention was to add this legacy to the Sailors' Home Fund of the Boston Ladies' Bethel Society.

BILL IN EQUITY, filed in the Superior Court, by the executors of the will of John B. Faulkner, for instructions as to whether the National Sailors' Home or the Boston Ladies' Bethel Society was entitled to a fund in their hands. Hearing before *Morton,* J., who, after a decree for the Boston Ladies' Bethel Society, reported the case for the consideration of the full court, such decree to be entered as law and justice might require. The facts appear in the opinion.

*W. C. Endicott & S. Butler,* for the National Sailors' Home.

*G. O. Shattuck & W. A. Munroe,* for the Bethel Society.

BARKER, J. Whether evidence of the testator's own declarations outside of the will was admissible to aid the court in

arriving at his intention, we do not find it necessary to decide, as there can be no question that the other evidence was admissible; *Tucker* v. *Seaman's Aid Society*, 7 Met. 188, 205; *Morse* v. *Stearns*, 131 Mass. 389; and we are of opinion that, if the evidence of the testator's declarations had been excluded, the result must have been the same.   The will was dated May 16, 1878, and among legacies to individuals, charitable societies, and corporations, a church, and other charities, contains a bequest in the following words: " To the Sailors' Home in Boston, the sum of four thousand dollars." Examining the facts and circumstances respecting the claimants of this legacy, we find that each is a corporation, and that neither is accurately named or described in the words of the bequest.

The name of one claimant is the National Sailors' Home, and it was chartered by the St. of 1865, c. 12, "for the purpose of establishing and maintaining in this Commonwealth a home for sailors, marines, and others employed in the naval service of the United States, disabled by wounds, sickness, old age, or otherwise, without regard to the place of their enlistment." The name of the other is the Boston Ladies' Bethel Society, and it was incorporated by the St. of 1855, c. 339, with power to hold real or personal estate to an amount named, and to " expend the same, or any part of the same, for the erection of a house of public worship among seamen, or in any other way to promote piety and the worship of God among seamen." The former claimant never had a sailors' home in Boston. The latter had none at the date of the will, or for eight years thereafter, but in 1884, two years before the death of the testator, it established and has since maintained a sailors' home in Boston.

With reference to the Boston Ladies' Bethel Society, the evidence tended to show, and the court found, that the society had interested itself in the furtherance of the purposes specified in its charter from the time when it was incorporated; that the Rev. Phineas Stowe was for many years its chaplain, and that it was supported by the Baptist churches in the vicinity of Boston; that from about the year 1865 it had been engaged in raising a fund for the maintenance of a Sailors' Home in Boston, which fund was known as " a fund for the Sailors' Home," and that it had made public appeals for this fund; that the

testator was a prominent Baptist, and until 1864 a deacon in the Malden Baptist Church, which church was represented in the management of the Boston Ladies' Bethel Society; that an appeal for legacies for this fund was contained in a chapter of the "Life of Phineas Stowe," a book printed in 1874, and a copy of which was in the testator's library; and that the testator knew of this fund, and was interested in Phineas Stowe and his work, and knew of this appeal.

With reference to the National Sailors' Home, the evidence tended to show that the incorporation was the result of a great national sailors' fair, held in Boston in 1864, to raise funds for the establishment of a home for men discharged from the naval service of the government; that, after the examination of various sites in and around Boston, land was bought in Quincy, and a home established there in 1866, from which time it has been in active operation as a home for sailors; that all the trustees have been business men of Boston, except two naval officers stationed there, members of the board *ex officio*; that three quarters of the meetings of the trustees were held in Boston, where also was the office of the treasurer and of the corporation; that applicants for admission were obliged to obtain a permit from the treasurer and one other trustee, after which they had to be examined at the home; that down to and including the year 1875 the address of the home, as shown by the Boston Directory, was at the office of its treasurer in Boston; that for two or three years, beginning in 1875, by an arrangement with the city of Boston, a room in the Chardon Street building of public charities was assigned as a place of examination of applicants for the home, and that its superintendent was present there twice a week, during certain hours, for the purpose of examining applicants who had obtained the permit of the trustees; that the inmates were furnished for life, or so long as they chose to remain, with board, lodging, care, clothing, and medical attendance; that outside assistance was at times given to men of Boston; that from 1866 to 1878 the institution was generally and popularly known in and about Boston by the name of the "Sailors' Home," the word "National" being omitted from the name in common parlance; and that during that period it was the only institution generally and popularly known in and about Boston as the Sailors' Home, except

a sailors' boarding-house called the Sailors' Home, which had existed for many years on Purchase Street, but which was given up in 1872 or 1873. The report states that it was not shown that the testator had any knowledge of the National Sailors' Home.

In our opinion these circumstances concerning the respective claimants, and the testator's knowledge of and interest in the Sailors' Home Fund of the Boston Ladies' Bethel Society, with his want of knowledge of the National Sailors' Home, and the absence of all evidence showing any interest in the organization or work of that corporation, show beyond doubt that it was his intention to add this legacy to the Sailors' Home Fund of the Boston Ladies' Bethel Society.

By the words, " to the Sailors' Home in Boston," the testator did not intend to give the legacy to any corporation by name, either corporate or common, or by description, but did undoubtedly intend to devote it to the same charity for which he knew that the Sailors' Home Fund of the Boston Ladies' Bethel Society was designed; and he expected that it would be administered with that fund by the society. As at the time of the decree that society was in a position so to administer it, the decree properly carried his intention into effect, and was right. *Bartlett* v. *Nye,* 4 Met. 378, 380. *Washburn* v. *Sewall,* 9 Met. 280. *Jackson* v. *Phillips,* 14 Allen, 539. *Russell* v. *Allen,* 107 U. S. 163.                                     *Decree affirmed.*