# CHARLESTON.

Ross' Ex'r *v.* Kiger *et al.*

Submitted June 8, 1896—Decided Nov. 21, 1896.

1. WILLS---MISDESCRIPTION OF BENEFICIARY——*Aliunde* TESTIMONY.

Where money is bequeathed to a school by a testatrix, designating the object of her bounty by a wrong name, but fixing the locality, it may be shown by extrinsic testimony what school was intended in the will, and that it was the only school controlled by a certain denomination of religious people in that place.

2. WILLS——MISDESCRIPTION OF BENEFICIARY——*Aliunde* TESTIMONY.

Where a bequest of money is made to a missionary society by a testatrix, designating the society by a mistaken name in her will, it may be shown by extrinsic testimony and surrounding circumstances what missionary society was intended

3. WILLS—*Per Stirpes—Per Capita.*

Where a testatrix, by her will, directs a residuum of her property to be equally divided between her heirs and her husband's heirs, said property should be divided into two equal parts, giving to her heirs one half and to her husband's heirs the othe-half, *per stirpes,* and not *per capita,* unless they all stand in the same relation to the testatrix.

J. Hop. Woods for appellants :

I.— *The word "dollars" may be supplied by court in a will where same was manifestly inadvertently omitted by testator.* —Beach, Wills, p. 526, § 322, note 2, Pony series; Ib. § 321.

II.—*"M. E. Church Conference Seminary" as such has power under West Virginia statutes to take legacy.*—29 W. Va. 169, ss. 4 and 5 of syl.; Code W. Va. c. 57, ss. 3 and 6.

III.—*"Missionary Society M. E. Church" is a corporation under New York statutes, and as such is empowered to take legacy.*—29 W. Va. 169; 32 Gratt. 357; 80 Va. 718.

IV.—*Court will take judicial notice of provisions of N. Y. statutes.*—Code W. Va. c. 13, s. 4.

V.—*Legacies should have been decreed to bear interest from date of death of testator.*—Beach, Wills, *supra,* ss. 155 and 264.

VI.—*Persons not named in caption or prayer of bill, and concerning whom interest appears in bill are not parties, and should be made such.*—33 W. Va. 155; 28 Ib. 196.

VII.—*Court will reverse for want of proper parties, and yet pass on merits to. obviate the necessity of a new appeal.*—33 W. Va. 155; 28 W. Va. 196.

Edwin Maxwell and John Bassel for appellants, cited Jarm. Wills, §§ 348, 349, 451; 1 N. E. Rep. 340, 840; 3 S. E. Rep. 451; 29 W. Va. 169, 184, 189, 784; 50 Vt. 716; 3 S. E. Rep. 387; 9 S. E. Rep. 1112; 3 Leigh, 450; 23 N. E. Rep. 603; 21 N. E. Rep. 227; 25 N. E. Rep. 34; 2 Perry, Trusts, 716-17-18; 9 W. Va. 124; 7 W. Va. 79; 23 W. Va. 187; 17 W. Va. 43; 3 W. Va. 174; 15 Gratt. 423; 13 Gratt. 301; 10 Leigh, 147; 3 Leigh, 450; 3 Lom. Dig. 189-90; 101 U. S. 362; 9 How. 55; 43 N. Y. 487; 33 N. Y. 97; 131 Ill. 33; 1 Leigh, 74; 12 Leigh, 350; 18 Gratt. 574; 81 Va. 687; 10 Gratt. 275; 2 Jarm. Wills, 619, s. p. 1051; 100 Mass. 348; 8 Met. 450; 29 Am. & Eng. Enc. Law, 420-23.

JOHN J. DAVIS and GEORGE C. STURGISS for appellee, cited Code, c. 57, ss. 1, 3; 9 W. Va. 140, 141; Const. Art. VI, § 47; 3 Leigh, 450; 4 Leigh, 327; 13 Gratt. 301; 15 Gratt. 423; 20 Gratt. 124; 23 Gratt. 21; 7 W. Va. 79; 3 W. Va. 174; 9 W. Va. 124, 141; 23 W. Va. 187; 29 W. Va. 126, 169, 784, 788; 17 W. Va. 43; 101 U. S. 362; 76 Va. 386; 31 W. Va. 622; 1 Call, 184; 10 Gratt. 275; 18 Gratt. 574; 1 Leigh, 74; 2 Redf. Wills, 31-34; 2 Jarm. Wills (Ed. 1861) 182; 12 Leigh, 350; 61 Am. Dec. 652; 34 N. E. Rep. 995; 118 Ind. 23; 113 Ind. 323; 4 Hawks, 393; 2 Ired. Eq. 72; 2 Jones, Eq. 113; 14 Ohio, 140; 15 Ohio, 103; 46 Barb. 68; 50 Pa. St. 128; 55 Am. Dec. 646; 1 Rich. Eq. 1414; 34 Am. St. Rep. 745; 21 S. C. 183; 54 Am. Rep. 235; 62 Ill. 417; 8 Metc. 450; 9 Metc. 143; 9 Am. St. Rep. 30; 3 Pa. St. 304; 91 Am. Dec. 156; 11 Atl. Rep. 366; 14 Allen, 205; 16 Gray, 102; 100 Mass. 348; 1 Phill. Eq. 8.

ENGLISH, JUDGE:

On the 9th day of March, 1892, Ellen C. Ross, of Harrison county, executed her last will and testament, which was in her own handwriting, and appointed William E. Jolliff and James Dunkin as executors thereof, and said James Dunkin qualified as sole executor of said will, and on the first Monday in April, 1893, said executor filed a bill in the circuit court of Harrison county, praying, among other things, a construction and interpretation of said will, and a settlement of his accounts as such executor before one of the commissioners of said court.

The clauses of the will concerning which difficulty was found in arriving at a proper construction read as follows: "I bequeath one thousand to the M. E. Church school situated in Buckhannon. My bank stock to the one who cares for me in my last sickness, if a niece on my side. The balance of property, land, and money in notes to be equally divided between my heirs and my husband's heirs, leaving out Mrs. Mary Ann Hoff, as she is already provided for. I bequeath five thousand to the M. E. Church Foreign Missionary Society ($5,000) to be paid over by W. Sheehy, and delivered to him in charge to pay over to society as a memorial fund in the name of George F. Ross and Ellen C.

Ross. The balance of property not willed, land, *etc.*, to be equally divided among George T. Ross' heirs and my heirs. The bequest to Mary Ann Hoff of one thousand dollars at her death to put in the hands of the trustees of the M. E. Church at West Milford, to lend out as a permanent fund to support the preacher of that church." Also: "I do hereby bequeath to the trustees of the Methodist Episcopal Church (53 acres) fifty-three acres of land to rent (the church at Bridgport, of which I am a member); land which is situated on the opposite side of the pike from the scales of George T. Ross joining in Geo. Faris and Esom Robinson. I will and bequeath the rent of this land for the support of the church in Bridgeport to which I belong during the term of twenty years from the time of my death. At the end of twenty years I bequeath the said land to Cora E. Calvert, free from the debts or control of her husband should she marry; at her death to be sold (if she leaves no heirs), and the money given to the trustees of the M. E. Church, in trust to build a church on the said land, called the 'Ross Chapel.' "

It seems to be conceded that the ruling of the court as to the clause giving fifty three acres of land to the trustees of the Methodist Episcopal Church at Bridgeport for twenty years, and then to Cora E. Calvert, holding the same to be void as a devise to the said church for uncertainty; and also as to the devise of "one thousand dollars to Mary Ann Hoff; at her death to be put in the hands of the trustees of the M. E. Church at West Milford, to lend out as a permanent fund to support the preacher of that church,"—is correct, but, as no question is raised in regard thereto either in the assignment of error or in the argument, we express no opinion in reference thereto.

Let us next inquire as to the ruling of the court with reference to the other clauses about which there is a controversy, and first as to the bequest of one thousand dollars to the M. E. Church school situated in Backhannon; and, while it is true it appears that there is no school in the town of Buckhannon called the "M. E. Church school," the question for consideration is whether it is competent to show by extrinsic testimony what school the testatrix in-

tended by "the M. E. Church school situated in Buckhannon." And the same question arises in regard to the bequest of five thousand dollars to the M. E. Church Foreign Missionary Society, to be paid over by William Sheehy, and delivered to him in charge to pay over to the society as a memorial fund in the name of George T. Ross and Ellen C. Ross, there being no missionary society of that exact name. First, as to the bequest to the M. E. Church school situated in Buckhannon: While it appears from the testimony that the name of the Methodist school situated in Buckhannon is known as the "West Virginia Conference Seminary at Buckhannon," which is controlled by the West Virginia annual conference, and that the testatrix was friendly to the school, and had contributed of her means toward it, that the school is often spoken of as the Methodist school at Buckhannon, and that there is no other Methodist school or seminary in the town of Buckhannon. As to the bequest to the M. E. Church Foreign Missionary Society, it appears in the testimony that there is not in the Methodist Episcopal Church any such organization as the M. E. Foreign Missionary Society, but that there is a society called the "Missionary Society of the Methodist Episcopal Church," which operates in home and foreign fields, with its principal office in New York City, under the management of a board of managers appointed by the general conference of the Methodist Episcopal Church, and the same is incorporated under the laws of the state of New York; that the testatrix was a member of the Methodist Episcopal Church, and contributed to its support, and the Missionary Society of the Methodist Episcopal Church is carried on by a board of managers appointed by the general conference, and its finances are taken up as free offerings of the people, and its funds received from voluntary contributions of its membership and others, and by its legacies and bequests from persons who are friendly to the church and to the society, who wish to give.

Now, the first question for our consideration is whether extraneous testimony can be allowed to determine the object of a testator's bounty where a mistake occurs in the name or designation, or the object of the bequest is involv-

ed in ambiguity. This question has frequently been before the courts of the different states, and the great weight of authority, as we find it, allows such testimony to be introduced to show the real object on which the testator intended to bestow his gift. So in the case of *Chappell* v. *Society*, 3 Ind. App. 356 (29 N. E. 924) reported in 50 Am. St. Rep. 276, it is held that: "For the purpose of determining the object of a testator's bounty in a will, extrinsic evidence is admissible to identify the legatee." Though no person or corporation in existence precisely answers to the name or description of the person or corporation to be benefitted by a will, extrinsic evidence is admissible to show who was intended. Hence such evidence is competent to show that a bequest by a testatrix, a member of the Church of Christ, to the "Christian Missionary Society" of a certain state, was intended for the Missionary Society of the Churches of Christ of that state. To the report of this case is appended a very valuable note, citing numerous authorities. In the case of *Gilmer* v. *Stone*, 120 U. S. 586 (7 Sup. Ct. 689) the syllabus reads as follows: "A., a resident in Irish Grove, Illinois, died there, leaving a will, by which, after bequeathing his library to the Presbyterian Church of Irish Grove, and five hundred dollars to the erection of another Presbyterian church in Illinois, and fifty dollars to be paid to the minister's salary of the Presbyterian Church of Irish Grove for 1884, and some other bequests, he bequeathed and devised the remainder of his estate 'to be equally divided between the board of foreign and board of home missions.' The Presbyterian Church in the United States of America has a corporate 'Board of Foreign Missions' and a corporate 'Board of Home Missions,' but it was agreed by counsel that several other religious bodies in the United States have similar organizations for the same purposes. *Held*, that there was a latent ambiguity in the will respecting the object of the residuary gift, which ambiguity could be removed by extrinsic evidence; and that the evidence introduced on that point, taken in connection with the other bequests in the will for the benefit of Presbyterian churches, showed that the testator, in making the residuary gift, had in his mind the Board of Foreign Missions and the Board of Home

Missions of the Presbyterian Church of the United States of America, of which he was a member and an officer." So, also, in the case of *Hinckley* v. *Thatcher*, 139 Mass. 477 (1 N. E. 840) a testator, by his will, gave the residue of his estate "equally to the authorized agents of the Home and Foreign Missionary Societies, to aid in propagating the holy religion of Jesus Christ. Held, that extrinsic evidence of the facts known to the testator at the time he executed the will, the names by which he was accustomed to call the missionary societies, or by which they were usually called and known in the religious society with which he worshiped, the interest shown by him in any particular missionary society, and the contributions which he made for missionary purposes, was admissible to aid in identifying the societies intended by the will." Again, in *Tilton* v. *Society*, 60 N. H. 377, it was held: "A legacy being given to 'the Bible Society,' and there being several Bible societies in existence when the will was made, the society intended by any testator may be identified by extraneous evidence. And evidence that a contribution for one of them was annually taken in the church of which the testator was a member is admissible." In 60 Conn. 472 (22 Atl. 848) in the case of *Bristol* v. *Orphan Asylum*, a legacy was given to "The Canandaigua Orphan Asylum, Ontario County, New York." There was no orphan asylum of that name located at Canandaigua or elsewhere, but one named the Ontario Orphan Asylum. The testator's wife had a sister living at Geneva, in the same county, who was manager of the Ontario Orphan Asylum, and at her request he had visited the institution, and had several times afterwards sent it money, and it was generally spoken of in Geneva and by her as the Canandaigua Orphan Asylum. The testator had spent two years in the latter part of his life, and before the will was drawn, in Geneva. The court below found that this asylum was the one intended. Held, "that the legacy was not void for uncertainty." See, also *Faulkner* v. *Sailors' Home*, 155 Mass. 458 (29 N. E. 645) where a pecuniary legacy given to "The Sailors' Home in Boston" was found by extrinsic evidence to have been intended for the "Sailors' Home fund of the Boston Ladies' Bethel Society." See,

also, the case of *Hawkins* v. *Garland's Adm'r*, 76 Va. 149, where extraneous evidence was admitted to show that a legacy given to S. G., son of Capt. J. F. S., was intended for S. G., son of Capt. J. F. H. See, also, in our own state, the case of *First National Bank of Ceredo* v. *Huntington Distilling Co.*, recently decided 41 W. Va. 530 (23 S. E. 792) in regard to mistake of the name of a corporation. See, also, *Wilson* v. *Perry*, 29 W. Va. 171 (1 S. E. 302) (fifth point of syllabus) where it is held: "Where the name or description is erroneous, and there is no reasonable doubt as to the person who was intended to be named or described, the mistake will not defeat the bequest; and the same rule applies as well to corporations as to individuals." Other authorities might be added to show that extrinsic evidence is admitted in cases of this character to show what was intended by the testator where a latent ambiguity exists, but these we regard sufficient to indicate the general trend of authority on the question; and, looking at the circumstances disclosed by the testimony in this case, we are of opinion that the court below erred in holding the bequest of one thousand dollars to the "M. E. Church School situated in Buckhannon" was void, and, in our opinion, said legacy was intended for the West Virginia Conference Seminary at Buckhannon, and we so hold; and we affirm the action of the circuit court as to the bequest of five thousand dollars to the M. E. Church Foreign Missionary Society, in holding that it was intended by the testatrix to give said legacy to the Missionary Society of the Methodist Episcopal Church, an incorporated body under the laws of the state of New York, and that said bequest is a valid bequest to said society, the testimony showing that that society was the only one to which contributions were given in the neighborhood of testatrix, or with the workings of which she was brought in contact.

The next clause which claims our attention is what is termed in the briefs of counsel the "residuary clause," or clauses, whereby the residuum is left "to be equally divided between my heirs and my husband's heirs." And again, in a codicil we find these words: "The balance of property not willed, land, *etc.* to be equally divided among Geo. T.

Ross' heirs and my heirs." My interpretation of these clauses is that she intended to divide the residue of her estate not therein disposed of equally between the two sets of heirs, to wit, her heirs and her husband's heirs, treating each set of heirs as a class, giving to her heirs, be they many or few, one half of what was left, and to the heirs of her deceased husband the other half, without reference to the number on either side; and this was the view taken by the circuit court. It is, however, claimed by a portion of the appellants that such residue was intended to be divided *per capita* among all of the heirs of the testatrix and her said husband, George T. Ross. It appears that the property the testatrix was disposing of was given to her to do as she pleased with, and, if she had died intestate, all of it would have descended to her heirs, to the exclusion of the heirs of her husband; and, if she had willed it to them, they would have received no more than they would have received if she had failed to make a will. But it was natural that the testatrix, having derived this property from her husband, should feel inclined to divide it between her heirs and her husband's heirs. She expresses her intention of dividing it equally; and, if she had given each one of these two sets of heirs an equal portion of what she had to bestow, her heirs would have received but one-third of said residue while the heirs of her husband would have received the other two-thirds, as there were but ten of her heirs while the others numbered twenty, so that it is manifest that it was not her intention to divide it in that way. So in 2 Jarm. Wills, side page 1051 (top page 206) par. 2, note 1, it is said: "Thus in a case where the testator devised the residue of his estate as follows: 'To be equally divided between the children of my sister B. and their heirs forever and the children of my sister C. and their heirs forever,' and C. survived the testator, B. being dead, the latter having seven children and the former four, it was held that the residue of the estate should be divided into two equal portions between the children of B. and C." See *Alder* v. *Beall*, 11 Gill & J. 123.. Also the case of *Bool* v. *Mix*, 17 Wend. 119, where it is held that a devise to two daughters of land "to be equally divided between them, share and share alike, and to be

to them for and during their natural life, and after their death, then to be to their and each of their children, and to be divided between them share and share alike, gives life estates to the daughters, with remainders to their respective children as tenants in common, the grandchildren taking *per stirpes*, and not *per capita*." Again, in the case of *Walker* v. *Griffin's Heirs*, 11 Wheat. 375, in which Chief Justice Marshall delivered the opinion, the syllabus is as follows: "Devise of the testator's estate: 'One fourth part to be given to the families of G. Holloway, W. B. Blackburn, and A. Bartlett to those of their children that my wife shall think proper, but in a greater proportion to F. P. Holloway than to any other of G. Holloway's children; to E. P. Bartlett in a greater proportion than any of A. Bartlett's children. The balance to be given to the families of C, and J. T. Griffin's children, equal proportions.' Held, that the children of C. and J. T. Griffin took *per stirpes*, and not *per capita*, and that the property devised to them was to be divided into two equal parts, one moiety to each family." Coming next to the state of Virginia, we find the case of *Hamlett* v. *Hamlett's Ex'r*, partially reported in 12 Leigh, p. 350, and although the opinion of the court, which was prepared by President Tucker, appears to have been mislaid, as is stated in a note by the reporter, yet the syllabus and statement of the case have been preserved, which syllabus reads as follows: "Testator bequeaths residuum of his estate after his wife's death or marriage to be equally divided among James, Mary, Patsey, Nancy, and Narcissa (who were testator's children) the children of his son George, the children of his daughter Elizabeth, the children of his son Bedford, deceased, and the children of his daughter Obedience. His five children's legatees were all married, and had in all thirty one children living at his death. His son Bedford left three children; and his son George and daughters Elizabeth and Obedience were married, and these four had in all eighteen children living at testator's death, and the three last had five children born after his death, and during his widow's life. Held by circuit superior court, and affirmed by this court: (1) That the children of George, Elizabeth, and Obedience born after testator's death and

during the widow's life, as well as those in being at testa-
tor's death, are entitled to shares.   (2) That such of the
grandchildren as were in being at testator's death took
vested and tranmissible interests, liable, however, to be di-
minished by the birth of other grandchildren, and the after-
born grandchildren, as soon as they came in being, took
likewise vested and transmissible interest.   (3) That the
grandchildren took *per stirpes,* and not *per capita;* so that each
of the testator's children legatees took one ninth, and each
family of his grandchildren legatees, took one ninth, to be
subdivided among them respectively." So, also, in the case
of *Hoxton* v. *Griffith,* reported in 18 Gratt. 574, the syllabus is
as follows: "Testator says, 'All my landed estate in West-
moreland, to be equally divided between my nephew E.
and the children of H. namely, L. S. W. M. and W.' E. and
H. were the nephew and niece of the testatrix, to whom she
was equally attached.   H. was dead when the will was
made.   By another clause she gives other property, to be
divided between E. and the surviving children of H. and
she says: 'Should any of the children of H. die without
heirs, the property left them shall be divided among the sur-
vivors.' Held, E. took one moiety, and the children of H. the
other moiety, of the Westmoreland land."   This question
was before the supreme court of Pennsylvania in Appeal of
Fissel, 27 Pa. St. 55.   The syllabus of the case is as follows:
"Where a testatrix directed her real and personal estate to
be equally divided 'between the children of my brother
John, deceased, and the children or heirs of my sister Ros-
anna, deceased, and the children or heirs of my sister Cath-
erine, deceased, and the children or heirs of my sister Jul-
iann, deceased, and my brother Jacob, or his heirs or legal
representatives,' it was held that the children described take
by classes, and not *per capita.*   Where the bequest is not to
several children of brothers and sisters, but to the children
of the several brothers and sisters, and the classes are dis-
tinguished by the repetition of the words, 'and between
each of them,' it amounts to a classification and the chil-
dren in each instance take their parent's share.   In constru-
ing devises or bequests in favor of the next of kin, the court
has regard to the legal and customary principles govern-

ing the descent and distribution of estates which is according to classes, and is presumed to be the intention of a testator, unless the contrary appears." See, also, *Balcom* v. *Haynes,* 14 Allen, 205, and *Holbrook* v. *Harrington,* 16 Gray, 102.

In view of these authorities, indicating, as we think, the true rule upon the questions involved, and looking at the surrounding circumstances shown by the testimony, I am led to the conclusion that the decree complained of, so far as it holds the bequest of one thousand dollars to the M. E. Church School situated in Buckhannon is void, should be reversed, and we hold that said bequest was intended for the West Virginia Conference Seminary at Buckhannon, and should be paid by the executor of said testatrix to those authorized by law to receive for said institution; and we affirm so much of said decree as holds that the bequest of five thousand dollars to the M. E. Church Foreign Missionary Society to be paid over by William Sheehy, and delivered to him in charge to pay over to said society as a memorial fund in the name of George T. Ross and Ellen C. Ross, was intended by the testatrix to be a bequest to the Missionary Society of the Methodist Episcopal Church, an incorporated body under the laws of the state of New York, and was a valid bequest to said society, and that said amounts, together with interest thereon from and after one year from the date of the death of said testatrix, should be paid over to said seminary and said missionary society. And said decree is also affirmed as to the manner in which it construes the clauses spoken of as the "residuary clauses," one of which reads: "The balance of property, land, and money in notes to be equally divided between my heirs and my husband's heirs, leaving out Mrs. Mary Ann Hoff, as she is already provided for;" and the clause which reads as follows: "The balance of property not willed, land, *etc.,* to be equally divided among Geo. T. Ross' heirs and my heirs;" and as to the other portions of the decree, uncontroverted, we express no opinion.

. Reversed in part, and affirmed in part.