The **PARKERSBURG NATIONAL BANK,** Executor of the Estate of Virginia Stewart Gordon, deceased, Plaintiff,

v.

**UNITED STATES of America,** Defendant.

Civ. A. 1237-W.

United States District Court
N. D. West Virginia,
at Wheeling.
April 3, 1964.

R. E. Stealey, Robert W. Burk, Parkersburg, W. Va., for plaintiff.

John H. Kamlowsky, Acting U. S. Atty., Herbert Odell, Atty., Tax Div., Dept. of Justice (Louis F. Oberdorfer, Asst. Atty. Gen., C. Moxley Featherston, Myron C. Baum, Attys., Dept. of Justice, on the brief), for defendant.

CHARLES F. PAUL, Chief Judge.

Plaintiff sues for a refund of Estate Taxes.

By her Will, the testatrix appointed the plaintiff bank as her executor and testamentary trustee. In a Codicil to her Will, the testatrix, referring to shares of stock in American Telephone & Telegraph Company, provided:

"I bequeath all stock in said Company which I may own at my death to The Parkersburg National Bank, a corporation, in trust for the following purpose. The principal of said stock shall be kept intact and the net income therefrom shall be paid to my cousin, Winifred Scott during the term of her natural life and at her death said net income shall be paid to the person or persons in charge of the adult choir of the First Methodist Church, Parkersburg, West Virginia, annually or at such other intervals of time as may be determined by said person or persons and the said Bank."

In the Estate Tax Return, the Executor claimed, as a deduction, under Sec. 2055 (a) (3) of the Internal Revenue Code,[1]

the value of the remainder interest in the trust created by the Codicil. The deduction was disallowed and a deficiency assessment levied. The assessment was paid and a subsequent claim for refund denied.

In conferences between the revenue officials and the attorneys for the Executor, when the deficiency was proposed, the attorneys were advised that the deduction was questioned because, in the view of the revenue agents, the Codicil attempted to create a private trust, not a religious trust, and, further, that the remainder interests in the attempted trust were invalid under West Virginia State law and in violation of the rule against perpetuities. The atttorneys for the Executor proposed that they seek a State Court determination of the questions.

Thereafter, the Executor and Trustee brought a suit for declaratory judgments, a construction of the Will provisions, and for instructions. The suit was brought in the Circuit Court of Wood County, West Virginia (a court of record having general jurisdiction), joining, as defendants, the individuals who comprise the Trustees of the First Methodist Church, Parkersburg, West Virginia, and all of the residuary legatees named in the Will, and who, under West Virginia law, would be entitled to the remainder interest if the trust failed. Proper process was issued and executed for the parties defendant.

In addition to the process, the Executor addressed a letter to each of the residuary legatees, attempting to explain the purposes of the suit. The letter set forth the terms of the trust, explained that the Internal Revenue Service took the position that the trust was invalid as a charitable or religious trust, and that, if that position succeeded, the residuary legatees

---

1. § 2055(a) (3):

"to a trustee or trustees, or a fraternal society, order, or association operating under the lodge system, but only if such contributions or gifts are to be used by such trustee or trustees, or by such fraternal society, order, or association, exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, and no substantial part of the activities of such trustee or trustees, or of such fraternal society, order, or association, is carrying on propaganda, or otherwise attempting, to influence legislation; or"

would be entitled to the remainder interest in the trust. It advised the residuary legatees to employ counsel, appear in the proceeding, file an answer, and assert their position with respect to the validity of the trust. The letter also explained that the bank's attorneys were taking the position that the trust is valid, and again urged that all interested parties who might take a contrary position be represented.

In spite of the process and the letter, none of the residuary legatees appeared. The Church Trustees retained counsel, answered the complaint (asserting their position that the trust is valid), and appeared at the hearing in the Circuit Court. Testimony of five witnesses was taken and documentary evidence introduced. The testimony principally related to the testatrix's membership and activities in the Church; her particular interest in the church music and the choir; and the provisions of the Discipline of the Methodist Church placing the supervision of the church property and activities, including the choir, in the Church Trustees. After briefs were filed and final submission, the court rendered an elaborate written Opinion, analyzing the law of the State of West Virginia, making findings of fact and conclusions of law, and arriving at the conclusions that the "(p)erson or persons in charge of the adult choir" of the Church were the Trustees of that Church; that the trust was a valid and enforceable religious trust under the laws of the State of West Virginia, and instructing the Executor and Trustees so to treat the trust fund; and an Order was entered accordingly. The time for appeal has long since expired and no appeal has been taken.

In this case, the Government takes the position that this court is not bound by, and should give no effect to, the State Court proceedings because they were collusive and nonadversary in nature. The Government then asks this court to inquire *de novo* into the validity of the trust, and to hold the attempted disposition of the remainder interest invalid, as a private trust violating the rule against perpetuities. The Government further insists that no religious or charitable purpose is spelled out in the Will, and that the State Court should not have given, and that this court cannot give, effect to any evidence *dehors* the written instrument tending to supply that religious or charitable purpose.

The Government admits that the State Court proceeding determined important property interests, and that it has binding effect upon the parties. It would have this court deny any tax effect to those proceedings because they were "collusive" in the sense that at least one of the purposes of the proceeding was to secure a tax advantage, and that they were "non-adversary" in the sense that the persons adversely affected did not appear and actively contest.

In so limiting the definitions of the words "collusive" and "non-adversary", as used in the Federal cases, the Government claims too much. In support of its contentions as to the ineffectiveness of the State Court proceeding, the Government cites Peyton's Estate v. C. I. R., 323 F.2d 438 (8 Cir. 1963); Faulkerson's Estate v. United States, 301 F.2d 231 (7 Cir. 1962); Stallworth's Estate v. Commissioner, 260 F.2d 760 (5 Cir. 1958); Merchants National Bank & Trust Co. of Indianapolis v. United States, 246 F.2d 410 (7 Cir. 1957); In re Sweet's Estate, 234 F.2d 401 (10 Cir. 1956); Newman v. Commissioner, 222 F.2d 131 (9 Cir. 1955); Second National Bank of New Haven v. United States, 222 F.Supp. 446 (D.C.Conn.1963). It also cites Pitts v. Hamrick, 228 F.2d 486 (4 Cir. 1955), in which the court accorded binding effect to the State Court proceedings.

It may be significant that none of these cases involves the validity of a charitable deduction. In each of them (except Newman), there was concerned the validity of a claimed marital deduction for a bequest to a widow. The State Court proceedings sought an enlargement or broadening of the widow's rights in order that the bequest might meet the technical restrictions of the marital deduction. In each

of the cases the simulated contest in the State Court was between members of a family community, and the inference was almost inescapable that the sole purpose of the suit was to secure a tax advantage which would redound to the benefit of the family, as a whole, sufficient to outweigh considerations which would prompt an active contest with possible family repercussions. No efforts were apparent to induce that active contest—in fact, in some of the cases, the State Court proceedings were ex parte, and, in all of the cases in whch the State Court proceedings were given no effect, the results reached in those proceedings were obviously erroneous.

Contrasting these factors with the ones which appear in this case: Here, we have a State Court proceeding involving substantial property interests in which the rival claimants have nothing in common; every reasonable effort was made fully to apprise the parties of their interests and to secure active independent representation; the questions involved were fully presented to the State Court and by it fully considered and determined; the tax purpose, at most, is subsidiary to the main purpose of instructing the Trustee and securing its protection (a purpose which had to be served at some time not later than the life tenant's death, and upon which the tax question had no more than an accelerating effect); the State Court's decision is based upon reason and authority.

The fact that the Government claims too much in its narrow definitions of "collusion" and "non-adversary" is clearly pointed out in the Opinion of the Eighth Circuit Court of Appeals in Peyton's Estate v. C. I. R., 323 F.2d 438, supra, at pages 443 and 444), from which the following quotations are apt:

> "There is language in some opinions which at first reading seems to imply that mere non-adversary character of the state proceeding vitiates it as precedent on a federal tax issue (citing cases). But we suspect that a close analysis of most of these opinions will disclose that they were concerned not so much with simple non-adverseness as with collusion of the type referred to in our next numbered paragraph. In any event, we certainly may say, so far as this case is concerned, that the non-adversary character of the probate proceeding does not by itself suffice to defeat its precedential value."

And again (quoting with approval from Gallagher v. Smith, 3 Cir., 223 F.2d 218, at pages 224–225):

> " 'Whatever may be the case with respect to consent decrees, however, it is clear that if the question at issue is fairly presented to the state court for its independent decision and is so decided by the court the resulting judgment if binding upon the parties under the state law is conclusive as to their property rights in the federal tax case, regardless of whether they occupied adversary positions in the state court or were all on the same side of the question.' "

With regard to collusion, the following quotations from Peyton seem appropriate:

> "As already noted, the cases disclose that, despite the usual controlling character of the state result, circumstances may exist where it is not conclusive. Sheer fraud, of course, is an obvious instance (citing cases). But it is not the only one. The Supreme Court, on at least two occasions, has intimated that the state proceeding is not controlling where it is collusive 'in the sense that all the parties joined in a submission of the issues and sought a decision which would adversely affect the Government's right to additional * * * tax'. Freuler v. Helvering, supra, p. 45 of 291 U.S. [p. 312 of 54 S.Ct., 78 L.Ed. 634]; Blair v. Commissioner, supra, p. 10 of 300 U.S. [p. 332 of 57 S.Ct., 81 L.Ed. 465]."

And again,

"In appropriate fact situations courts have not hesitated to conclude that disqualifying collusion did not exist and to recognize the state court decree as final."

This court is persuaded that, in the factual situation in this case, the proceedings in the Circuit Court of Wood County were neither collusive nor non-adversary in the correct definition of those terms, and that those proceedings should be given binding effect here, even if this court thought (as it does not) that the State Court arrived at an erroneous conclusion.

This court finds no error in the State Court's considering evidence extraneous to the Will in order to identify the recipients of income payments. The problem before the Circuit Court of Wood County was to determine just who or what body fitted the description in the Codicil as the "(p)erson or persons in charge of the adult choir of the First Methodist Church". Whether this problem be characterized as the resolution of a "latent" ambiguity or "patent" ambiguity, or as an ambiguity at all, it is clear that in the Virginias, extraneous evidence is admissible to ascertain and make definite the intended recipients incorrectly, imperfectly, or incompletely defined in the Will. See Wilson v. Perry, 29 W.Va. 169, 1 S.E. 302 (1886), Syll. 4, and Ross Executor v. Kiger, 42 W.Va. 402, 26 S.E. 193 (1896). Another interesting case in which the subject was not discussed but in which extraneous evidence was received and considered, is Trustees of the General Assembly of the Presbyterian Church in the United States v. Guthrie, 86 Va. 125, 10 S.E. 318 (1889), in which, in order to validate a religious bequest the court determined that a bequest to the "secretary of the Board of Foreign Missions of the Presbyterian Church in the United States" was a bequest to the plaintiff Trustees (a body corporate) for the use of its Committee of Foreign Missions. The Government contends, however, that such evidence should not have been admitted in order to supply a religious object or purpose of the trust, since the Will contained no such expression. This loses sight, however, of the fact that, once the persons who are to take the income payments are identified as the Church Trustees, the West Virginia Statute [2] makes unnecessary any further expression of charitable or religious purpose or further definition of the beneficiaries or objects of the trust. The statute validates the trust.

Wholly aside from the effect of the State Court proceedings or the West Virginia statutes, it would seem to this court that the plaintiff is entitled to the claimed deduction. In attacking the trust, the Government pre-supposes that the Will evidences no charitable or religious purpose on the part of the testatrix and that the trust is purely a private trust, since the sole beneficiaries are the persons who may be in charge of the choir, from time to time, *qua* individuals. The Government assumes too much.

It should be noted at the outset that this is not one of the type of cases where

2. West Virginia Code 35-1-4 (Michie's Code, § 3491) provides, in part:
"No conveyance, devise, dedication, gift or bequest * * * hereafter made to any church, religious sect, society, denomination, or to any individual church, congregation, parish or branch within this state, or to the trustee or trustees for either, shall fail or be declared void for insufficient designation of the beneficiaries in, or the objects of, any trust annexed to such conveyance, devise, dedication, gift or bequest in any case where a lawful trustee or trustees of such church, religious sect, society, denomination, or of any individual church, parish, congregation or branch, are in existence * * *; but such conveyance, devise, dedication, gift or bequest shall be valid; and whenever the object of such trust shall be undefined, or so uncertain as not to admit of enforcement by a court of chancery, then such conveyance, devise, dedication, gift or bequest shall inure and pass to the trustee or trustees of the beneficiary church, * * * to be held, managed, and the principal or income appropriated for the religious and benevolent uses of such church * * *."

a trust, allegedly charitable or religious, has been invalidated because there is no legal entity empowered to take and administer the trust, and that, therefore, the courts of chancery cannot decree enforcement. A well-established bank, having trust powers and perpetual existence, has been designated to receive and administer the trust property. There remains only an inquiry as to whether the purposes are in aid of religion and the ultimate beneficiaries or cestuis que trust constitute an indefinite class which the promotion of religion is assumed to benefit. It is ridiculous to assume that Mrs. Gordon had in mind payment solely in aid of private individuals whose identity she could not know and who, in any event, were not natural objects of her bounty. It is clear that she intended the office of choir director or directors to benefit and, through that benefit, to promote and enhance the effectiveness of that part of the church services which some churches (somewhat euphemistically) choose to call the "ministry of music". It is clear further that she intended to accomplish this result by making provision for the payment, or supplementing the payment, of a salary to a person or persons having professional expertise. In other words, by her gift, she intended to subsidize the musical portion of the church services and, to that extent, to relieve the Church of the financial burden thereof. There is no more reason to characterize this trust as non-religious than there is to contend the endowment of a chair or professorship in a college or university is non-educational.

■ The law, generally, favors gifts and trusts for religious activities and does not require specific declarations of the use or purpose. See the exhaustive annotation in 81 A.L.R. 2, beginning at page 819, and, Restatement, Trusts 2d § 371, Comments b and c. The Congress, in according the deductions from estate taxes provided in Sec. 2055 of the Revenue Act, has placed its blessing upon trusts for religious purposes, and those provisions are entitled to liberal construction.

It would seem that the trust in question meets the more enlightened common law tests and falls strictly within the purview of the applicable tax laws. The only situation in which the claimed deduction justifiably could be denied would be one in which, for some reason peculiar to the laws of the State of West Virginia,[3] both the testamentary and congressional intent should be thwarted and the trust property diverted to the individual residuary legatees. That eventuality has been obviated in this case. There is then, no reason why this West Virginia trust estate should not be accorded the deduction which would be available to trusts under the laws of most, if not all, of the other States. This seems to be the approach used by Chief Judge Biggs, writing for the court in Francis Edward McGillick Foundation v. C. I. R., 278 F.2d 643, 647 (3 Cir. 1960).

Judgment may be entered for the plaintiff, the Judgment Order to be settled promptly.

3. An early United States Supreme Court decision and early Virginia cases which were followed by the West Virginia Courts held, in effect, that gifts to a trust for unincorporated charitable organizations and charitable gifts and trusts generally were void because the Virginia Legislature had not incorporated the English Statute of Charitable Uses, 43 Elizabeth Ch. 4, into Virginia law. Trustees of the Philadelphia Baptist Association v. Hart's Executors, 17 U.S. (4 Wheat.) 1, 4 L.Ed. 499 (1819); American Bible Society v. Pendleton, 7 W.Va. 79 (1873); Wilson v. Perry, 29 W.Va. 169, 1 S.E. 302 (1886); Pack v. Shanklin, 43 W.Va. 304, 27 S.E. 389 (1897).

As pointed out in Hays v. Harris, 73 W.Va. 17, 80 S.E. 827 (1913) and again in IV Scott on Trusts, Sec. 348.3 (2nd ed.), these holdings resulted from the misconception that charitable uses were not recognized at common law and that charitable gifts and trusts owed their vitality and validity to 43 Elizabeth Ch. 4.

In spite of recognition of the mistake, West Virginia has continued to deny validity to charitable gifts and uses except as validated by the specific terms of West Virginia statutes. See Goetz v. Old National Bank of Martinsburg, 140 W.Va. 422, 84 S.E.2d 759 (1954).